THOMSON NATIONAL PRESS COMPANY vs. NATIONAL UNION
FIRE INSURANCE COMPANY & another.

Norfolk.  February 14, 1983. — June 24, 1983.

Present: GRANT, PERRETTA, & WARNER, JJ.

*Insurance,* Liability insurance, Construction of policy.  *Contract,* Insurance.

A policy of insurance providing a manufacturer with excess liability coverage contained no ambiguity which would have justified a court in construing the statement of policy limits strictly against the insurer. [246-248]

Provisions in a policy of excess liability insurance referring to the exhaustion of the insured's underlying liability insurance coverage included only such exhaustion as might result from claims based upon occurrences during the policy period, and not any exhaustion of the underlying coverage resulting from claims based upon occurrences before the start of the policy period. [248-249]

CIVIL ACTION commenced in the Superior Court Department on October 9, 1980.

The case was heard by *Roger J. Donahue,* J.

*Anil Madan (Alice J. Klein & Rosann C. Madan* with him) for National Union Fire Insurance Company.

*Thomas W. Callahan* for Thomson National Press Company.

*Jacob J. Locke* for Keough-Kirby Associates, Inc.

PERRETTA, J.  When the defendant excess-insurer, National Union Fire Insurance Company (National), defended claims against the plaintiff-insured, Thomson National Press Company (Thomson), while reserving its right to contest liability on its excess insurance policy with Thomson, Thomson brought an action against National, alleging a breach of contract, and against Keough-Kirby Associates,

Inc. (Keough), Thomson's insurance broker, claiming negligence, breach of contract and violations of G. L. c. 93A, § 11. National counterclaimed against Thomson, making various allegations of fraud, deceit and unfair acts by Thomson in securing excess insurance coverage from National. Thomson and National, but not Keough, submitted their dispute on a statement of agreed facts. The trial judge, with the consent of Thomson and National, treated the complaint, as between them, as one seeking a declaratory judgment under G. L. c. 231A, § 1, and as being submitted on a case stated. See generally Nolan, Civil Practice §§ 642-647 (1975). The issue thereby presented is whether Thomson, before resorting to the excess insurance coverage provided by National, had exhausted the primary coverage as required by the terms of the excess insurance contract. The trial judge concluded that Thomson had complied with all the terms of its insurance contract with National. He entered a judgment so declaring, as well as ordering dismissal of Thomson's complaint against Keough and of National's counterclaim against Thomson. On these cross appeals by Thomson and National, we reverse the judgments except as to the dismissal of National's counterclaim.

1. *The Facts.*

Because it manufactured highly durable and sizeable presses for sale to the graphics industry, Thomson regarded itself as vulnerable to personal injury claims and sought protection by procuring casualty insurance through its broker, Keough. There are five insurance contracts which are here pertinent.[1]

a. *Commercial Union Insurance Company (Commercial).*

Thomson was insured by Commercial for the policy period September 23, 1975, through September 23, 1978. The face of this policy limits Commercial's liability to $300,000 for "each occurrence." However, by a "Change Endorsement," effective June 2, 1976, the limits of liability are described as being $300,000 "each occurrence, $300,000.00 aggregate."

---

[1] The five contracts were attached as exhibits to the statement of agreed facts.

In their statement of agreed facts, Thomson and National state: "Although the dispute in this case is predicated upon there being an 'aggregate' limit in Commercial['s] . . . policy, the 'Change Endorsement' in question is suspect because it effectively reduced coverage (assuming that an erroneous recitation of limits in the Change Endorsement operates to do so) without consideration. · . . . Both Thomson . . . and National . . . reserve their rights to proceed against Commercial . . . in this regard."

Commercial has never been made a party to this action.[2]

b. *National.*

With Commercial's above policy named as the primary insurance, National insured Thomson for the period September 23, 1976, through September 23, 1977, for each occurrence in excess of $300,000, with a limit on its liability of $200,000 for each occurrence. The aggregate limit on Commercial's underlying liability is set at $300,000, and National's aggregate liability for the excess coverage is limited to $200,000, for total limits, each occurrence and aggregate, of $500,000.

c. *Affiliated FM Insurance Company (Affiliated).*

From July 7, 1976, through July 21, 1977, Thomson had an excess umbrella insurance policy with Affiliated. This policy, however, was due to expire during the primary and excess policy periods set out in the contracts of Commercial and National, above described.

d. *Chicago Insurance Company (Chicago).*

Because of the lapse in coverage by Affiliated, Thomson obtained umbrella insurance from Chicago for the period July 21, 1977, through July 21, 1978. Chicago limited its liability for each occurrence and in the aggregate to $2,000,000 in excess of the underlying insurance designated in the amount of $500,000, each occurrence, $1,000,000, aggregate. Commercial's policy, described in paragraph a above, was designated as the primary insurance.

---

[2] Our holding goes only to the insurance contract between Thomson and National, and we specifically refrain from any intimation concerning the insurance coverage provided Thomson by Commercial.

As previously noted, however, Commercial, by its "Change Endorsement" of June 2, 1976, had limited its liability to $300,000, each occurrence and aggregate.

e. *National.*

To meet Chicago's underlying insurance requirements, Thomson purchased additional coverage from National for the period July 21, 1977, through September 23, 1977. The face of this policy, labeled "Excess Third Party Liability Policy," names Commercial as the primary insurer with underlying limits of $300,000, each occurrence and in the aggregate. National then limited its liability on the instant policy to $200,000, each occurrence, with an aggregate liability of $700,000. Thus, on the face of this policy, Thomson's total coverage from Commercial and National was $500,000, each occurrence, and $1,000,000, aggregate; Chicago's underlying requirements were met.

On the date of issuance of National's policy, described in paragraph e above, July 21, 1977, there were outstanding claims of bodily injuries against Thomson that were being defended by Commercial under its primary coverage contract, see paragraph a above. These claims involved injuries which had occurred between September 23, 1976, and July 21, 1977. Commercial ultimately paid out $300,000 on them. Additionally, on its policy described in paragraph b above, National paid $200,000 on claims for bodily injuries which also had occurred between September 23, 1976, and July 21, 1977.

Thereafter, two more claims involving bodily injuries occurring after July 21, 1977, and before September 23, 1977, were asserted against Thomson and presented to National under its policy described above in paragraph e. Commercial took the position that it was not liable on these claims because its $300,000 aggregate liability limit had been exhausted.

Thomson and National agree that when National issued its excess coverage policy, discussed in paragraph e above, on July 21, 1977, neither knew that the preexisting claims would exhaust the primary insurance provided by Commer-

cial. They also agree that if Commercial's underlying policy does have an aggregate liability limit of $300,000, then no other insurance policy was in place to provide primary aggregate limits, not previously exhausted, for the policy period of National's excess coverage.

The trial judge concluded that on July 21, 1977, Thomson did have the primary coverage required by National's excess coverage policy, that "the limits of the primary coverage of Commercial . . . were $300,000 per occurrence, aggregate $500,000-$1,000,000," and that "where [National], on July 21, 1977, for a substantial premium, decided to take the risk that the claims against the primary carrier (Commercial . . .) might eventually exhaust the primary coverage, it cannot expect the Court to absolve it from its contractual obligations." He ruled that National was obligated under its excess coverage policy to handle the claims presented to it which involved injuries occurring during the policy period.

2. *National's Appeal.*

Thomson claims that National's policy here in dispute, paragraph e above, is ambiguous because the language contained in its "Unimpaired Primary Aggregate Limits Endorsement" is unclear and inconsistent with item 6 of the declarations which pertain to the limits of National's liability under the policy. Relying on cases such as *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. 801, 803 (1980), and *Bates* v. *John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. 823, 823-824 (1978), Thomson argues that the trial judge correctly resolved the ambiguity in its favor.[3]

Looking to the policy, we note that the word "Company" refers to National and the words "primary insurance" are specifically designated as Commercial's policy, described in

---

[3] In *Slater* the court concluded that if the insurer had intended to exclude employee fidelity from its "all risk" policy coverage, it could have used plain language to do so. As reasonably construed, the policy covered the insured's loss caused by an employee's embezzlement. *Bates* held that the words "specific duties" could be construed to mean either "specific functions" or "legal obligations," and, therefore, adoption of the construction favorable to the insured was required.

paragraph a above. Item 6 of the policy's declarations set out the Company's (National's) limits of liability, and to the extent here relevant, appear as follows:

| | SECTION I   IN EXCESS OF | | SECTION II | SECTION III |
|---|---|---|---|---|
| Coverage | Company Limits | | Underlying Limits | Total Limits |
| A. Bodily Injury | $200,000 | Each accident or Occurrence | $300,000 | $ 500,000 |
| | $700,000 | Aggregate Products | $300,000 | $1,000,000 |

A paragraph entitled "Insuring Agreement" immediately follows the declarations, and it states in pertinent part that "[t]his policy shall apply only to coverages for which an amount is indicated in Item 6, Section I, and then only in excess of the corresponding amount as indicated in Item 6, Section II of the Declarations."

The "Unimpaired Primary Aggregate Limits Endorsement" reads: "In consideration of the premium charged it is hereby understood and agreed that such coverage as is afforded by the policy shall only apply in excess of the aggregate limits shown in Item 6, Section II, of the declarations when said aggregate limits have been exhausted by reason of claims based upon bodily injury or property damage which has occurred during the policy period shown in Item 3 of the declarations [July 21, 1977, through September 23, 1977]."

The trial judge made no express finding concerning an ambiguity in the terms of the policy, but he did conclude that the above recited language in the "Insuring Agreement" made reference to the limits of Commercial's primary insurance which he held to be "in the amount required, i.e., $300,000 each occurrence of bodily injury, with total or aggregate limits of $500,000-$1,000,000," and

that Commercial was required to handle the claims which arose during its policy period.

The policy must be read together with the "Unimpaired Primary Aggregate Limits Endorsement." *Adamaitis* v. *Metropolitan Life Ins. Co.*, 295 Mass. 215, 219 (1936). *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. at 803. In so doing, we find no ambiguity, and we do not, therefore, construe the terms of the documents strictly against National. "Rather, we must construe the words of the policy in their usual and ordinary sense." *Barnstable County Mut. Fire Ins. Co.* v. *Lally*, 374 Mass. 602, 605 (1978).

Sections I and II of Item 6 of the declarations set out the coverage provided by the Company (National) *and* the underlying insurer (Commercial), arriving at, in Section III, the total limits of liability provided by the two policies. This clear language is consistent with the express terms of the previously quoted "Insuring Agreement," which also provides: "[T]he Company agrees to indemnify the insured, in accordance with the applicable insuring agreements of the Primary Insurance, against loss subject to the limits stated in Item 6, Section I of the Declarations as fully and to all intents and purposes *as though* the Primary Insurance had been issued for the limits set forth in Item 6, Section III of the Declarations" (emphasis supplied).

Therefore, without deciding whether Commercial properly had limited its aggregate liability, we conclude that by the unambiguous terms of item 6 of the declarations and of the insuring agreement, National agreed to provide a limited amount of coverage for damages in excess of that protection afforded by Commercial's underlying insurance. The question now is whether the exhaustion of Commercial's liability on account of its payment of claims for injuries occurring before National's undertaking can be relied upon by Thomson in resorting to its excess coverage for losses due to injuries taking place during National's policy period.

Not only does Thomson's reasoning attempt to convert National from an excess to an underlying insurer for the in-

juries occurring during its policy period, contrary to item 6 of the declarations, but it flies in the face of the simple and certain language of the "Unimpaired Primary Aggregate Limits Endorsement." The endorsement provides that National's excess coverage shall be available only when the aggregate limits appearing in Item 6, Section II, "have been exhausted by reason of claims based upon bodily injury or property damage which has occurred during the policy period shown in Item 3 of the declarations," which is July 21, 1977, through September 23, 1977. If Thomson believed that pre-policy-period injuries could exhaust the insurance underlying National's excess coverage, its misunderstanding was not due to any failure by National to use language which Thomson could "reasonably understand to be the scope of [its] coverage." *Slater* v. *United States Fid. & Guar. Co.*, 379 Mass. at 803. See also *Bates* v. *John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. at 824.

We need not consider whether National's counterclaim against Thomson, alleging fraud, deceit, and unfair acts by Thomson in securing insurance coverage from National, was properly dismissed for the reason, if no other, that National has made no argument on this point. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Wolfberg* v. *Hunter*, 385 Mass. 390, 391 n.1 (1982).

3. *Thomson's Appeal.*

Thomson appeals from the judgment of dismissal entered on its complaint against Keough, alleging negligence, breach of contract, and violations of G. L. c. 93A, § 11, in its failure to secure appropriate insurance coverage for Thomson.[4] The trial judge dismissed this complaint solely on the basis of his order and judgment in Thomson's action against National. As that order is erroneous, it follows that the judgment of dismissal of Thomson's complaint against Keough must be reversed.

---

[4] By both its notice of appeal and its brief, National has saved whatever rights it believes it may have against Keough due to Thomson's claims of joint and several liability.

4. *Conclusion.*

That part of the judgment declaring the rights of the plaintiff-insured and the defendant-insurer as they pertain to the defendant-insurer's policy No. CE 1156971 is vacated, and the matter is remanded to the Superior Court for entry of a judgment declaring their rights in a manner consistent with this opinion; so much of the judgment as dismisses the defendant-insurer's counterclaim against the plaintiff-insured is affirmed; the remaining portion of the judgment dismissing the plaintiff-insured's complaint against Keough-Kirby Associates, Inc., is reversed.

*So ordered.*