CBS INC., Plaintiff,

v.

CONTINENTAL CASUALTY CO., Defendant.

No. 89 Civ. 4124 (JES).

United States District Court, S.D. New York.

Jan. 8, 1991.

   **526**

Douglas P. Jacobs (Anthony M. Bongiorno, of counsel), New York City, for plaintiff.

Dorsey & Whitney (Richard L. Bond, Robert C. Hughes, of counsel), New York City, for defendant.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff CBS Inc. ("CBS") brings this action seeking a declaratory judgment that defendant Continental Casualty Company ("CNA") is obligated to indemnify CBS for certain losses and defense costs pursuant to an excess errors and omissions policy issued by it. Both parties move for summary judgment. For the reasons that follow, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment dismissing the complaint is granted.

## BACKGROUND

The relevant facts are largely undisputed.

Plaintiff CBS is a New York corporation engaged in the operation of a television network, several television stations and the distribution of records, books and magazines. *See* Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 3(g) ("Deft's 3(g) Statement") at ¶ 1; Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 3(g)

("Pltf's 3(g) Statement") at ¶ 1. CNA is an Illinois corporation engaged in the business of underwriting insurance which is licensed to do business in New York. *See* Deft's 3(g) Statement at ¶ 2; Pltf's 3(g) Statement at ¶ 2.

CBS purchased primary and excess policies of errors and omissions insurance to cover its liabilities for, *inter alia*, statements made during CBS broadcasts. *See* Pltf's 3(g) Statement at ¶ 5. During the years 1978 to 1981 the primary coverage was provided by a policy issued by Lloyd's of London ("Lloyd's") while the excess coverage was provided by a group of insurance brokers that included CNA. The primary policy issued by Lloyd's provided coverage of $500,000 for each occurrence and $500,000 for the aggregate of all occurrences during each policy year. *See* Pltf's 3(g) Statement at ¶ 7. The policy also provided that CBS was required to pay a deductible of $100,000 for each occurrence. *See id.* at ¶ 8.

During the early spring of 1981, CBS' insurance broker, Paul Apostolos of Herbert Jamison Co., contacted William E. Bauer, president of CNA's underwriting manager Media/Professional Insurance, Inc. ("Media/Professional"), to inquire about the possibility of CNA's providing primary insurance coverage for CBS for the year beginning June 1, 1981. *See id.* at ¶ 9; Deposition of William Bauer ("Bauer Dep.") at 85–87 (annexed to Defendant's Notice of Motion as Ex. D to the Affidavit of Richard L. Bond, Esq.).

Since negotiations for that coverage continued into May 1981, CBS obtained an extension of its Lloyd's policy so that its underlying primary coverage would not expire while CBS was negotiating for replacement coverage. *See* Deposition of Dennis D'Oca ("D'Oca Dep.") at 13–17 (annexed to Plaintiff's Notice of Motion as Ex. F to the Affidavit of Douglas P. Jacobs, Esq. ("Jacobs Aff.")). Lloyd's agreed to provide coverage for the month of June 1981 and issued an addendum to its existing policy which increased the limit of that policy by one-twelfth to $541,096. Lloyd's assessed a premium of $32,876.71 for that coverage,

which was roughly one-twelfth of the preceding year's premium. *See* Pltf's 3(g) Statement at ¶¶ 10–15.

CBS then sought to obtain excess coverage for the month of June from CNA. By telegram dated June 1, 1981 Bauer advised Apostolos that CNA would provide excess errors and omissions coverage of $2,500,000 for each occurrence and $2,500,000 aggregate over primary coverage of $500,000 each occurrence and $500,000 aggregate with a $100,000 deductible issued by Lloyd's. *See* Deft's 3(g) Statement at ¶ 8; Ex. L to Jacobs Aff. CNA charged a premium of $30,750 for this coverage. *See* Pltf's 3(g) Statement at ¶ 18.

A binder of insurance was sent in June 1981 which bound CNA as of June 1, 1981, and the policy itself was delivered on or about November 4, 1981. *See* Deft's 3(g) Statement at ¶ 9; Pltf's 3(g) Statement at ¶¶ 16–19. The policy set forth the limits of liability noted above and further provided:

> If the "each occurrence" or "each person" limit of liability of the underlying insurance is less than as stated in column II in item 4 in the declarations because the aggregate limits of liability of the underlying insurance have been reduced, this policy becomes excess of such reduced limit of liability *if such reduction is solely the result of injury or destruction occurring after the inception date of this policy and not before.* Nothing contained herein shall operate to increase the limit of the company's liability.

Continental Casualty Co., Excess Third Party Liability Policy No. RDX 1787396 at Part III (annexed to Defendant's Notice of Motion as Ex. C to the Affidavit of William E. Bauer) (emphasis added).

On or about November 4, 1981, Bauer wrote to Apostolos requesting a copy of the Lloyd's cover note of the underlying insurance policy. Apostolos wrote back on November 17, 1981 stating that Lloyd's had extended its existing policy and forwarded a copy of Lloyd's addendum to the covering note evidencing the extension of coverage

to July 1, 1981.[1] *See* Pltf's 3(g) Statement at ¶¶ 21–22; Exs. H & O to Jacobs Aff.

In December 1987, CBS notified CNA, its excess carrier, that its policy limit of $541,-096 for losses arising out of occurrences during the thirteen month period of June 1, 1980 to July 1, 1981 was exhausted and requested indemnification for one claim that arose during June 1981. *See* Pltf's 3(g) Statement at ¶ 32; Ex. S to Jacobs Aff. However, CNA refused to indemnify CBS because the claims which had exhausted its primary coverage had not occurred during the period of its excess coverage, *i.e.,* from June 1, 1981 to July 1, 1981. CNA maintained that its excess coverage was not triggered unless the primary coverage was exhausted as a consequence of claims arising during that period. *See* Ex. T to Jacobs Aff.

CBS instituted this diversity action on June 13, 1989. CNA filed its answer and counterclaims on July 10, 1989.

## DISCUSSION

CNA argues that it is entitled to summary judgment because its policy clearly and unambiguously requires that the primary policy's limits be exhausted by claims arising from occurrences during the period June 1, 1981 through July 1, 1981, a circumstance concededly not present here. The Court agrees.

■ The relevant portion of the policy provides that the policy will be excess to reduced limits of a policy of underlying insurance if "such reduction is solely the result of injury or destruction occurring after the inception date of the policy and not before." This provision is clear and unambiguous and requires that the limit of the underlying policy be exhausted by claims arising during the policy period, and not prior to that time. Summary judgment is therefore appropriate because the underlying policy has not been exhausted by claims arising during that period. *See Levy v. Nat'l Union Fire Ins. Co.,* 889 F.2d 433, 434 (2d Cir.1989) (per curiam); *Caporino v. Travelers Ins. Co.,* 62 N.Y.2d 234, 239–40, 465 N.E.2d 26, 28, 476 N.Y. S.2d 519, 520 (1984) (per curiam); *accord Thomson Nat'l Press Co. v. National Union Fire Ins. Co.,* 16 Mass.App.Ct. 242, 451 N.E.2d 432, 436 (Mass.App.1983), *review denied,* 390 Mass. 1102, 453 N.E.2d 1231 (1983).

■ The Court rejects CBS' contention that because CNA knew that Lloyd's had extended its existing policy instead of issuing a new policy it therefore must be deemed to have agreed that the limits of underlying insurance required by its contract could be exhausted, as they were, in defense of claims arising before June 1, 1981. The Court is not free to make an agreement for the parties different than the one which the record unequivocally establishes they made and cannot ignore the clear language of the policy so as to obligate CNA to provide greater coverage than it agreed to provide. *See First State Underwriters v. Travelers Ins. Co.,* 803 F.2d 1308, 1313 (3d Cir.1986). This is especially true where, as here, both parties are of equal sophistication and bargaining strength.

■ CBS' further contention that the Lloyd's policy was actually incorporated by reference into the CNA policy by an endorsement to the policy borders on the frivolous.[2] As the endorsement relied upon

---

1. Apostolos expressed concern that the contract was not set up as a "following form" contract, which is an excess policy that covers the same risks as the underlying policy, and observed that the contract should state that it tracks the London coverage. *See* Ex. H to Jacobs Aff. Bauer responded that the policy was a following form contract and that there was an endorsement to the policy that provides coverage for defense costs after the primary policy was exhausted, which was necessary because CNA's basic policies excluded coverage of defense costs. *See* Ex. P to Jacobs Aff.

2. The endorsement relied upon by CBS provides: "Item 3 of the declarations is amended to read as follows:

Underwriters at Lloyd's London, per Addendum attached to and forming a part of policy Number 79DD35C/1PG50124 (88.14%) supplemented by other Lloyd's Underwriters and London companies."

Endorsement No. 3 to CNA Policy No. RDX1787396 (annexed as Ex. N to Jacobs Aff.).

itself makes clear the Lloyd's addendum was incorporated into the *Lloyd's* policy, not the excess policy issued by CNA.[3]

■ Finally the Court rejects plaintiff's argument that CNA should be estopped from relying on the clear language of its policy. Even assuming that the other requirements of estoppel could be met here, a proposition which is dubious at best, the plain language of the policy, which CBS received as early as November 1981, clearly put CBS on notice of the extent of CNA's excess coverage. Under these circumstances reasonable reliance by CBS on any alleged conduct or misrepresentations by CNA or its agent, an essential element of estoppel, cannot rationally be inferred.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendant's motion is granted. Accordingly, the complaint is dismissed and the Clerk of the Court is directed to close the above-captioned action.

---

**3.** Equally unavailing is plaintiff's claim that the fact that the CNA policy was a "following form" policy to the Lloyd's policy somehow indicates that the Lloyd's policy was incorporated by reference into the CNA policy. As the record clearly establishes that circumstance means only that the policy covered the same risks as the Lloyd's policy, including in this instance defense costs, which ordinarily were not covered by CNA's excess policies. *See* Bauer Dep. at 53–56 (Ex. C to Jacobs Aff.). It had nothing to do with the extent of the limits of CNA's excess coverage or the events which would trigger its applicability.