OPINION OF THE COURT
Henry J. Kalinowski, J.
The plaintiffs bring this suit to recover under an insurance policy for the loss of an engagement ring. The defendant has denied coverage based upon one of the exclusions of the policy.
The defendant has moved this court for summary judgment pursuant to CPLR 3212 alleging that there exists no triable issue of fact and that one of the exclusions of the insurance policy in question applies to the present fact pattern.
The defendant contends that the language of the exclusion is clear and unambiguous in that the ring was not in the “care, custody and control of the named insured” when it was lost. The defendant claims that based upon this exclusionary portion of the policy the plaintiff was properly denied coverage.
The plaintiffs’ papers assert the position that the ring was lost and that at no time did she intend to or relinquish the “care, custody and control” of the jewelry.
The question presented is whether the actions of the plaintiff Yvonne Lockwood Viviano triggered one of the exclusions of the policy so that the defendant could correctly deny coverage under it.
*519 The essential facts of the case are not in dispute. On January 19,1981, the plaintiffs, husband and wife, went to dinner at Cooky’s Restaurant in Valley Stream. In the course of the evening, Mrs. Viviano went to the ladies’ room. There she took her engagement ring off and placed it on the sink. She also placed her purse alongside the ring. After washing her hands, she picked up her purse, but failed to take her ring. After dinner and upon leaving the restaurant, the plaintiffs realized that the jewelry was missing. Mr. Viviano returned to search for the ring, but his search was to no avail. The Nassau County Police were called and a report of the incident was taken. The following day, Mrs. Viviano phoned the defendant to inform it of her loss and followed the call with a letter dated January 21, 1981.
After receiving the claim of loss under the “Customers Personal Jewelry Policy” the defendant, by letter dated February 6, 1981, denied coverage under exclusion No. 5, which reads as follows: “There shall be no coverage under this policy if the article insured is lost, stolen or damaged in any way when not in the care, custody and control of the named insured, except when in the custody of a jeweler for repair, alteration or appraisal or when being shipped by registered first-class mail and in the custody of the United States Post Office.”
There is no issue regarding the effectiveness of the policy at the time of the alleged loss, nor is there a question of proper and timely notice to the defendant. Therefore, the court finds that the policy was in effect and that the plaintiffs’ notice to the defendant conformed to the requirements of the policy.
The type of insurance policy involved in this action was first known as “inland marine insurance” and more recently has been referred to as.a “personal property floater policy.” These policies have been designed to cover the loss of or damage to various personal items of the insured and have been used extensively to cover the loss of personal jewelry. Selected portions of volume 30 of New York Jurisprudence (Insurance, § 1161, pp 575-576) shed some light on the interpretation of this type of insurance: “Generally speaking, an inland marine policy insuring personal prop *520 erty, jewelry, and furs against all risks of loss or damage is an agreement of indemnity and is designed to compensate for actual loss sustained * * * And, as in liability insurance, the insurer assumes the risk of negligence of the insured, and the insured is protected against the consequences of his own conduct if unattended by fraud or design to cause damage. In other words, only fraud or intentional wrongdoing or gross negligence, such as a deliberate disregard of plainly foreseeable consequences, defeats recovery.” (Emphasis added.)
The case of Finkelstein v Central Mut. Ins. Co. (8 Misc 2d 261), cited under footnotes 16 and 17 supports the plaintiffs’ position in the present lawsuit, since no evidence of gross negligence or wrongful intent on the part of either plaintiff has been found or alleged. If the court were to base its determination on this general statement of law, the plaintiffs would summarily succeed. However, a closer look at the defendants’ position is required. Defendant has denied coverage to the plaintiffs based upon the previously recited exclusion contending that the loss of the ring occurred while the ring was not within Mrs. Viviano’s “care, custody and control”. It alleges that the ring was voluntarily parted with or mislaid and that this falls within the exception quoted above.
Based upon the pleadings, the affidavits and memoranda of law that have been submitted by the parties to support their respective positions on this motion, it is evident that the clause in question is subject to various interpretations. Therefore, this dispute requires that the language in question be construed by the court.
The maxim of “contra proferentem” is applicable to the present situation. This term is defined as “Against the party who proffers or puts forward a thing.” (Black’s Law Dictionary [4th ed], p 393.) This maxim has become well-settled law in this State, especially in the area of insurance policies where an ambiguity exists. The resolution of such ambiguity is to be construed liberally in favor of the insured. (Government Employees Ins. Co. v Kligler, 42 NY2d 863; Miller v Continental Ins. Co., 40 NY2d 675; State Farm Mut. Auto. Ins. Co. v Westlake, 35 NY2d 587.) This rule of construction has been particularly applied to *521 exclusionary clauses. (Breed v Insurance Co. of North Amer., 46 NY2d 351; Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356; Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386.) The reason for this rule of law is found in the following excerpt: “The policy, although of standard form, was prepared by insurers, who are presumed to have had their own interests primarily in view, and hence, when the meaning is doubtful, it should be construed most favorably to the insured, who had nothing to do with the preparation thereof.” (Matthews v American Cent. Ins. Co., 154 NY 449, 456-457.)
One New Jersey court has gone so far as to find that the phrase “care, custody or control of the insured”, is inherently ambiguous and because of this the court felt that the policy in question required a construction against the insurer. (Boswell v Travelers Ind. Co., 38 NJ Super 599.)
In light of the fact that there is no given definition in the present policy the court is required to look elsewhere to construe the exclusionary phrase.
“Care” is defined as “[a] relative term and one of broad comprehension and flexibility of meaning”. (12A CJS, Care, p 922.)
“The word ‘custody’ is defined generally as meaning a keeping; guardianship; the state of being held in keeping or under guard; restraint of liberty; imprisonment; control of a thing or person with such actual or constructive possession as fulfills the purpose of the law or duty requiring it; and it has been stated that in defining the word, the dominant factors to be charge, control, and possession.” (25 CJS, Custody, p 88.)
The word “control” is defined as “[a] comprehensive term, of well-understood meaning, having various significations, and subject to different limitations, but having no legal or technical meaning distinct from that given in its popular acceptation. It has been said that, when broadly used, the term may embrace every form of control, actual or legal, direct or indirect, negative or affirmative; and, under particular circumstances, has been held to import complete control, or the full and unqualified right to control and direct, legal control, potential control as distin *522 guished from actual control or direction, or the right of control as distinguished from actual physical control.” (18 CJS, Control, p 28; emphasis added.)
It is clear from the above definitions that the phrase in question is one which is subject to various meanings depending upon the factual situation that may arise. It is also reasonable to believe that under the circumstances of the present case, that the insured plaintiffs intended to be covered for their fortuitous loss.
Based upon the foregoing and upon the fact that this is a comprehensive all-risk policy for which coverage may arise even when the insured is negligent and also upon the public policy of this State to construe an insurance policy least favorably against the drafter if ambiguity is found, this court finds that the engagement ring in question was lost while in the care, custody and control of the plaintiff, Yvonne Viviano, and that the plaintiffs shall have summary judgment in the amount of $3,450, plus interest from the date of the loss.