BOYD MOTORS, INC., Plaintiff–Appellant,

v.

EMPLOYERS INSURANCE OF WAUSAU, Defendant–Appellee.

No. 87–2260.

United States Court of Appeals, Tenth Circuit.

July 20, 1989.

Deborah T. Carney, Lakewood, Colo., (Hal D. Meltzer and Gregory N. Pottorff, of Turner and Boisseau, Wichita, Kan.,

with her on the brief), for plaintiff-appellant.

Paul Hasty, Jr. of Wallace, Saunders, Austin, Brown and Enochs, Overland, Kan., for defendant-appellee.

Before SEYMOUR and SETH, Circuit Judges, and SEAY, Chief Judge.*

PER CURIAM.

Plaintiff, Boyd Motors, Inc. (Boyd), appeals from an order of the district court granting summary judgment in favor of defendant, Employers Insurance of Wausau (Wausau). As a preliminary matter, we note that Boyd has not appealed the dismissal of its tort and punitive damage claims and that its attempt to obtain appellate review of a disputed discovery order issued by the magistrate some eight months prior to disposition of this case by the district court is ineffective due to Boyd's failure to challenge the order first in the district court. *See Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164–65 (10th Cir.1986). Accordingly, we are concerned only with the judgment entered in favor of Wausau on Boyd's breach of contract theory.

The facts pertinent to the parties' dispute over the extent of coverage afforded Boyd's automobile inventory by an inland marine insurance policy issued by Wausau are set out in the district court's published opinion, *Boyd Motors, Inc. v. Employers Insurance of Wausau*, 670 F.Supp. 310 (D.Kan.1987), as follows:

1. The defendant, Employers Insurance of Wausau, issued a commercial inland marine insurance policy to Volkswagen Credit, Inc.

2. Volkswagen purchased the policy so it could surcharge the policy and thereby provide coverage to automobile dealers who floor-planned their new car inventory with Volkswagen Credit, Inc.

3. Plaintiff claims coverage under the policy for certain vehicles that plaintiff floor-planned with Volkswagen Credit, Inc.

4. Plaintiff is an automobile dealer whose new-car inventory was severely damaged by hail.

5. The defendant paid $103,160.41 to Volkswagen Credit, Inc. on plaintiff's claim for the floor-planned automobiles, based on the cost of repairing the damaged vehicles.

6. Plaintiff seeks an additional $40,-609.48 based on its claim that the vehicles are worth less after the damage and repairs than the vehicles were worth before the damage.

7. Plaintiff claims that the repairs do not put the vehicles in the same condition as they were when they were new.

8. The policy at issue in this case is the inland marine insurance policy. The terms of the insurance policy provide the following:

5. This policy insures against all risks of *direct physical loss or damage* to the insured automobiles, except:

a. Loss or damage caused *directly or indirectly* by:

. . . .

c. loss or damage resulting from delay, *loss of market,* . . . .

6. Limit of Liability—the limit of liability under this policy for any one disaster or casualty at any one location shall not exceed $3,000,000 . . . provided, however, that in no case shall the Company be liable for any *dealer's prospective profit or overhead charges of any nature whatsoever* . . . .

*Id.* at 312 (emphasis added by district court).

The controlling issue in this case is whether Wausau satisfied its obligations under the subject policy when it paid for what were considered cost-effective repairs[1] to Boyd's hail-damaged automobile

---

* Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

1. Evidently because of the prohibitive transport costs involved, the vehicles were not fitted with new parts to replace all of those damaged by hail. Instead, much of the damage was repaired by hammering out the dents, smoothing out the surfaces with putty and repainting.

inventory but refused to compensate Boyd for the diminution in value that allegedly was not restored by such means. This issue breaks down into two separate questions, relating to general coverage on the one hand and specific exclusion on the other: (1) Does the Wausau policy, which insures against only "direct physical loss or damage," cover the residual diminution in value of the repaired vehicles and (2) if so, does the policy's exclusion of "[l]oss or damage resulting from ... loss of market" nevertheless preclude Boyd's recovery for such diminution in value? The district court held in Boyd's favor on the coverage question but ultimately ruled for Wausau on the basis of its interpretation of the exclusion. We review the district court's construction of the policy de novo in the absence of ambiguity requiring reliance upon extrinsic evidence. *See Nunn v. Chemical Waste Management, Inc.*, 856 F.2d 1464, 1467 (10th Cir.1988); *In re Amarex*, 853 F.2d 1526, 1529 (10th Cir. 1988).

We agree with the district court's conclusion that, pursuant to Wausau's promise to "repair or replace the [damaged property] with material of like kind and quality," the general coverage of the policy extended not only to the cost of repairs but also to the diminution in value of the repaired vehicles. *See Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667, 672–73 (1974) (when insurer attempts to repair or rebuild under a "repair, restore or replace clause," insurer is obligated to return the damaged property to substantially its original condition so as to render it as valuable as it was before damage occurred); *accord generally* Appleman, *Insurance Law and Practice*, Vol. 6, § 3883 at 373–77 and n. 27.05 (1972) (under clauses limiting liability of an insurer to the cost of suitable repair or replacement, "the cost of repairs and replacement will not operate as a limitation of liability unless the automobile is restored to its previous condition, and the courts have, where the repairs have failed to fully restore the vehicle to its former

condition, either allowed recovery for the difference between the fair cash value before and after the accident or have awarded the diminution in value in addition to the cost of repair"). Wausau attempts to distinguish the Kansas Supreme Court's decision in *Venable*, which involved a comprehensive automobile liability policy rather than a commercial inland marine policy,[2] in three respects. First of all, Wausau maintains that the policy in *Venable* was much broader than its counterpart here, since it evidently covered "loss to the described automobile" not specifically qualified as *direct physical* loss. This distinction would have some legal force only if we were also to accept Wausau's attendant contention that the underscored qualification is actually operative here, *i.e.*, that depreciation directly attributable to the physical damage and subsequent repair of Boyd's automobiles does not constitute a direct physical loss. This latter proposition is untenable.

The second distinction Wausau emphasizes is that the policy in *Venable* did not exempt from coverage economic injury resulting from loss of market. This point, however, relates to the matter of exclusion rather than coverage, and is addressed in its proper context below.

Finally, Wausau maintains as a general matter that inland marine insurance policies such as Boyd's are somehow sui generis, requiring a construction unconstrained by precedent developed in connection with other types of insurance. Wausau cites no authority for this position, which is undercut by cases from various contexts interpreting such policies in accordance with standard principles of contract construction. *See, e.g., Dubuque Fire & Marine Ins. Co. v. Caylor*, 249 F.2d 162, 163–64 (10th Cir.1957); *Van Sumner, Inc. v. Pennsylvania. Nat'l Mut. Casualty Ins. Co.*, 74 N.C.App. 654, 329 S.E.2d 701, 702–03, *review denied*, 314 N.C. 676, 336 S.E.2d 406 (1985); *Slater v. United States Fidelity and Guar. Co.*, 7 Mass.App. 281, 386 N.E.2d 1058, 1060–61 (1979), *remanded*,

**2.** For a brief description of the evolution of this omnibus category of insurance, also referred to as "all risks" or property "floater" insurance, from its merchant marine origins to its present application to movables generally, *see* Appleman, *supra*, Vol. 4, § 2104 at 5–8.

379 Mass. 801, 400 N.E.2d 1256, (1980); *Viviano v. Jewelers Mut. Ins. Co.*, 115 Misc.2d 518, 454 N.Y.S.2d 404, 405–06 (N.Y.Dist.Ct.1982).

We turn now to the question whether Boyd's recovery of post-repair diminution in value, though within the scope of the policy's initial coverage provisions, is ultimately precluded by the loss of market exclusion. The district court concluded that "the diminution [in] value which occurs after an accident, despite repairs, clearly is defined as loss in market," and accordingly held in favor of Wausau on the basis of the exclusion. *Boyd Motors, Inc.*, 670 F.Supp. at 314. However, the only case cited by the district court in support of this conclusion, *Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1168 (5th Cir.1983), does not discuss "loss of market" but rather "loss of market *value*," which, as discussed below, is an entirely separate concept. Furthermore, Wausau has not referred us to a single authority that supports the district court's interpretation of the former phrase. Every decision relied upon by Wausau, whether cited for application of the disputed exclusion or for denial of coverage generally, is inapposite for one of two reasons; either the case, like *Robertson*, deals only with "loss of market value" without so much as mentioning "loss of market," or the case involves an attempt to recover for plainly consequential economic damages, such as lost profits or loss of use during repairs, rather than for diminution in value due to incompletely restored physical damage to the insured property itself.

In essence, Wausau's position and the district court's consonant disposition are grounded on the premise that "loss of market" and "loss of market value" are equivalent terms. It is on this fundamental point that, for several reasons, we diverge from the analysis followed below.

First of all, words used in an insurance policy are to be understood in terms of their ordinary, plain meaning. *See Kansas State Bank & Trust Co. v. Old Am. Ins. Co.*, 491 F.2d 307, 309–10 (10th Cir.1974); *American Media, Inc. v. Home Indem.*

*Co.*, 232 Kan. 737, 658 P.2d 1015, 1018 (1983). Thus, "market" means the geographical or economic extent of commercial demand for any particular product and generally refers to a more or less identifiable group of prospective purchasers seeking a particular type of product offered by a more or less identifiable group of sellers. *See generally Webster's New International Dictionary* at 1504 (2d ed. 1950); *Black's Law Dictionary* at 874 (5th ed. 1979); *Encyclopedia Britannica*, Vol. 11 at 511 (15th ed. 1982). "Market value," on the other hand, means the price that a product can command in a given (general or particularized) market. *See generally Webster's New International Dictionary* at 1504; *Black's Law Dictionary* at 876. This difference in meaning and reference between the two terms is reflected generally in the case law. *Compare Words and Phrases*, Vol. 26A at 33–34 (Perm. ed. 1953) (1988 Supp. at 7–8) (collecting references to "market") *with id.* at 67–110 (1988 Supp. at 15–28) (collecting references to "market value"). To summarize the contrast between the two terms, "market" refers collectively to matters external to any particular product item, namely those conditions that determine the degree to which supply of that commodity exceeds or falls short of demand, whereas "market value" is a function of qualities (*e.g.*, age, state of repair) inherent in the individual item itself, and refers to the price that that specific article with those qualities would command in a given market. Thus, as Boyd has argued throughout the proceedings, a market is lost when, for example, due to delay in distribution, changes in consumer habits, etc., a certain type of product is no longer in demand with its intended purchasers, while what is involved in the present case, in which particular merchandise in Boyd's inventory has allegedly suffered depreciation due to physical alteration (damage and restoration), is a loss of market value. Since the exclusion under review relates only to the former, Boyd correctly contends that the plain meaning of the policy supports its position.

The second reason for accepting Boyd's position is that it is borne out by the few

cases interpreting loss of market exclusions in other insurance policies. The following decisions treat such exclusions in a manner consistent with the construction urged by Boyd: *Dietrich v. United States Shipping Board Emergency Fleet Corp.,* 9 F.2d 733, 744–45, and cases discussed therein, (2d Cir.1925), *cert. denied,* 278 U.S. 647, 49 S.Ct. 82, 73 L.Ed. 560 (1928); *Interpetrol Bermuda, Ltd. v. Lloyd's Underwriters,* 588 F.Supp. 1199, 1201–02 (S.D.N.Y.1984); *Nationwide Brokers, Inc. v. C & G Trucking Corp.,* No. 87–C–5770, 1988 WL 116827, 1988 U.S.Dist.LEXIS No. 12037 (N.D.Ill. filed Oct. 21, 1988).

Boyd's position is bolstered further when the loss of market exclusion is read, as it must be, in light of both the immediately surrounding text and the policy as a whole. *See Farm Bureau Mut. Ins. Co. v. Horinek,* 233 Kan. 175, 660 P.2d 1374, 1378 (1983); *Scott v. Keever,* 212 Kan. 719, 512 P.2d 346, 350 (1973). With respect to immediate context, "loss of market" appears as just one term in a list of excluded losses that also includes damages caused by delay, bankruptcy, and foreclosure proceedings. The combination of these indirect economic damages with "loss of market" is entirely consistent with Boyd's interpretation of that phrase as a reference to adverse repercussions in the marketplace and is plainly at odds with Wausau's position that the phrase refers to diminution in market value of particular merchandise due to its physical (damaged and repaired) condition. We find it noteworthy that this association of loss of market with other indirect or consequential economic losses appears to be standard practice. *See, e.g., Blaine Richards & Co. v. Marine Indem. Ins. Co.,* 635 F.2d 1051, 1052 (2d Cir.1980); *Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 261–62 (Tex.App.1987); *Twin City Hide v. Transamerica Ins. Co.,* 358 N.W.2d 90, 92 (Minn.App.1984); *Borden, Inc. v. Howard Trucking Co.,* 425 So.2d 893, 897 (La.App.), *modified,* 454 So.2d 1081, 1091

(La.1983); *see also* authorities interpreting loss of market exclusion cited above. With respect to construction of the policy as a whole, it is the rule that reasonable interpretations are favored over unreasonable ones, and a reading that vitiates the purpose or reduces the terms of the policy should be avoided. *Farm Bureau Mut. Ins. Co.,* 660 P.2d at 1378. Here, if the loss of market exclusion is applied to the diminution in value of Boyd's damaged and repaired inventory, a substantial part of the express purpose of the policy—*i.e., equivalent* replacement or *complete* repair of physical damage to the insured property—would be frustrated.[3]

Accordingly, we hold that the policy in question covers the post-repair diminution in value of Boyd's damaged inventory and that such coverage is not defeated by the loss of market exclusion contained therein. We note that our holding is consistent with, though not reliant upon, several related general principles of insurance policy construction recognized by the courts of Kansas. *See United States Fidelity & Guar. Co. v. Hokanson,* 2 Kan.App.2d 580, 584 P.2d 1264, 1266 (1978) (in order to afford greatest possible protection to insureds, coverage clauses are interpreted broadly and exclusionary clauses narrowly), cited in *Central Security Mutual Insurance Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15, 17 (1984); *Baugher v. Hartford Fire Insurance Co.,* 214 Kan. 891, 522 P.2d 401, 409 (1974) (exceptions, limitations, and exclusions require narrow construction on theory that insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on such coverage in clear and explicit terms); *Patrons Mutual Insurance Association v. Harmon,* 240 Kan. 707, 732 P.2d 741, 746 (1987) (where terms of policy are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the con-

---

**3.** Indeed, taking the equation of "loss of market" with "loss of market value" to its logical conclusion would lead to the absurd result of the exclusion swallowing coverage whole. Since, as written, the loss of market exclusion is not qualified in any way so as to restrict its application solely to post-repair depreciation, accepting the identity of the two terms in question would appear to entail adoption of the indefensible position that *all* loss in value to the insured property (*i.e.,* the entire covered risk) is excluded from coverage under the policy.

struction most favorable to insured must prevail).

The order of the United States District Court for the District of Kansas granting summary judgment in favor of Wausau on Boyd's breach of contract claim is REVERSED, and the cause REMANDED for further proceedings consistent herewith.