**SARITEJDIAM, INC., Plaintiff,**

v.

**EXCESS INSURANCE,
et al., Defendants.**

**No. 90 Civ. 4787 (MJL).**

United States District Court,
S.D. New York.

Oct. 29, 1991.

Orans Elser & Lupert by Gary Greenberg, New York City, for plaintiff.

Budd Larner Gross Rosenbaum Greenberg & Sade by Louis M. Rohrberg, New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before this court is plaintiff Saritejdiam, Inc.'s ("Saritejdiam") motion for summary

judgment pursuant to Fed.R.Civ.P. 56. Defendants Excess Insurance, et al. ("The Underwriters") oppose this motion.

## BACKGROUND

Saritejdiam is a company engaged in the wholesale trade of diamonds, other gems and jewelry. Affidavit of Yogesh K. Madhvani, at 1 (hereinafter "Madhvani Aff"). In June, 1988, the Underwriters, a group of London based insurance companies, issued an insurance policy ("The Policy") to Saritejdiam. The Policy is an "All Risks" type, called a Jewelers Block policy, which insures against all risks of loss or damage, unless specifically excepted by the policy. *See* Exhibit A to Madhvani Aff.

On May 13, 1989, Robert Danilin, an independent contractor/salesman for Saritejdiam, lost a shipment of diamonds valued at $267,514.30 while eating in a diner in upstate New York. Mr. Danilin left his diamond case on a chair, and a witness has stated that the case was subsequently picked up by another patron of the diner. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at 2 (hereinafter "Plaintiff's Memo"). On the same day, Saritejdiam reported the loss to the Underwriters pursuant to the terms of the Policy. Madhvani Aff. at 3. After investigating the claim, the Underwriters refused to cover the lost diamonds, claiming that Saritejdiam and Danilin had not complied with the terms of the Policy. Madhvani Aff. at 3.

At issue before this Court on the motion for summary judgment is the interpretation of a particular part of the Policy, entitled the "Personal Conveyance Clause." This section states that the policy "only covers the Insured interest in transit when in the *close personal custody and control* of the Assured and/or Assured's representative and/or agent at all times whilst in transit subject to hotel/motel clause, excluding all losses due to infidelity." *See* Exh. A to Madhvani Aff. (emphasis added). Saritejdiam contends that it and Danilin were acting in compliance with the terms of the Policy when the diamonds were lost. The Underwriters, however, claim that, by

leaving the diamonds unattended, the plaintiff failed to comply with the terms of the Personal Conveyance Clause and, therefore, the loss is not covered. *See* Answer at 3; Exh. E to Madhvani Aff.

## DISCUSSION

Under Rule 56(c), a party's motion for summary judgment should be granted if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") In this case, the parties agree upon all the material facts; therefore, it must be determined whether or not Saritejdiam is entitled to a judgment in its favor, according to these facts, under New York law.

### I. *Saritejdiam's Argument*

This case turns on the construction of the Personal Conveyance Clause, particularly the phrase "close personal custody and control." It is a well-established principle of insurance law in the state of New York that "if there be doubt or uncertainty as to the meaning of language in [a] ... policy, any resultant ambiguity is to be resolved against the insurance company." *Milstein v. Ortner*, 65 Misc.2d 649, 318 N.Y.S.2d 629, 632 (N.Y.Civ.Ct.1966); *see also Lavanant v. General Acc. Ins. Co.*, 164 A.D.2d 73, 561 N.Y.S.2d 164, 168 (1st Dep't.1990) ("It is a well-settled tenet of construction that any ambiguity in an insurance policy must be construed against

the insurer, the draftsman of the policy."). Therefore, if the parties can present more than one reasonable interpretation of the phrase "close personal custody and control", the binding construction will be Saritejdiam's.

As discussed at the hearing before this Court on February 8, 1991, the case of *Viviano v. Jewelers Mutual Ins. Co.*, 115 Misc.2d 518, 454 N.Y.S.2d 404 (Dist.Ct. 1982) illustrates the way in which such language is interpreted in New York. In *Viviano*, the plaintiff's engagement ring was covered by a "comprehensive all risk policy", called a "personal property floater policy". *Id.* at 521, 454 N.Y.S.2d at 407. While eating dinner at a restaurant, Ms. Viviano went to the ladies' room, removed her ring and placed it on the basin. When Ms. Viviano left the ladies room, she forgot the ring, and it was never recovered. *Id.* at 519, 454 N.Y.S.2d at 405.

Ms. Viviano's insurance policy contained a passage which stated that there would be no coverage if insured items were lost while not in the "care, custody and control" of the insured. *Id.* Her insurance company, in moving for summary judgment, argued that the exclusionary passage was clear and unambiguous and, in their view, the ring was not in Ms. Viviano's care, custody and control when she lost it, her loss was not covered under the policy. The court, however, did not consider the phrase to be clear and unambiguous, accepting as another reasonable interpretation Viviano's conclusion that the exclusion only became binding if the insured *intentionally* relinquished "care, custody and control", which she did not. In addition, the court's own research suggested that "care" is an indefinitely defined term, that "custody" can be constructive and that "control" can be qualified. *Id.* at 520–21, 454 N.Y.S.2d at 406–07. The court found the phrase "care, custody and control" to be ambiguous and held that, since Ms. Viviano's was an all-risk policy, coverage "[could] ... arise even when the insured is negligent and ... the public policy of this state [is] to construe an insurance policy least favorably against the drafter if ambiguity is found." *Id.* at 521, 454 N.Y.S.2d at 407. The defen-

dant was ordered to honor Ms. Viviano's claim.

As discussed at the February 8 hearing, the parallels between *Viviano* and the case at bar are striking. Both involved all-risk policies and the inadvertent mislaying of jewels in a restaurant. Both involved insured parties who filed timely claims while still covered. Finally, both policies contained very similar language; the Viviano policy using "care, custody and control" and the Saritejdiam policy reading "close personal custody and control." In light of the parallels, unless the Underwriters can distinguish *Viviano* from the instant case, Saritejdiam's motion for summary judgment must be granted.

## II. *The Underwriters' Arguments*

Under Rule 56(e), a party adverse to a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [their] ... pleading, but [their] ... response ... must set forth specific facts showing that there is a genuine issue for trial." *See also Briggs v. Kerrigan*, 431 F.2d 967, 968 (1st Cir.1970) ("When a motion for summary judgment has been properly made and supported, an adverse party must set forth specific facts showing that there is a genuine issue for trial.") The Underwriters offer two main objections in opposition to Saritejdiam's motion for summary judgment motion; one is that *Viviano* does not apply and the other is that "close personal custody and control" is not ambiguous.

### A. Viviano

In trying to distinguish *Viviano*, the defendants first assemble a list of all the possible differences between the policies including, particularly, the difference in the words used between "care, custody and control" (*Viviano*) and "close personal custody and control" (*Saritejdiam*) and the fact that one was a personal property floater policy and the other was a jewelers block policy. While these things are true, they do not alter the material similarities between the cases.

The Underwriters offer no support for their contention that when the word "care" is combined with "custody and control", the phrase becomes ambiguous, while the addition of "close personal" to "custody and control" makes it totally clear. The variation between the language of the policies could easily reflect the different needs of the insured. In *Viviano,* the insured was presumably planning to wear her ring, show it to admirers, take it off, clean it, etc. Therefore, the language "care, custody and control" is suitably broad enough to take into account the various situations the owner of an insured piece of jewelry would find themselves in. On the other hand, Saritejdiam's salesman had only one purpose in mind with respect to the insured diamonds—to transport them from one place to another. The more narrowly drawn language, "close personal custody and control", reflects this limited use. Despite this narrower focus, the phrase in the Saritejdiam policy is still subject to the same ambiguity that the court found in *Viviano.*

■ Equally unconvincing is the defendants' assertion that a jeweler's block policy would be treated differently, under New York law, than a personal property floater policy. The rule that ambiguities in insurance policies are to be resolved against the insurance company appears to be applied generally; this Court has found no case which exempts jewelers block policies from this rule. The Underwriters' mere allegation that jewelers block policies are somehow unique, is not sufficient to meet the standard required of an opposing party under Rule 56(e).

■ Finally, the Underwriters argue that while the relative clause in *Viviano* is one of exclusion, the personal conveyance clause in the Saritejdiam policy is a condition precedent to coverage on insured goods in transit which must be met *before* coverage will be extended. The defendants' support for this position is that the personal conveyance clause is not listed as one of the "Exclusions" on pages three and four of the Policy. While this is true, the personal conveyance clause is also not listed in the section entitled "Conditions Precedent to Liability Hereon" on page two. If the defendants had wanted the personal conveyance clause to be construed as a condition precedent, then they, as the drafters, should have placed it in the section which addressed this. "An exclusion or limitation of liability ... by the insurance company is not favored by the courts unless such intention is apparent from the language employed in the insurance contract." *Milstein,* 318 N.Y.S.2d at 632. As written, the personal conveyance clause appears to be more of an exclusion than a condition precedent, and this ambiguity must be resolved against the Underwriters.

### B.   Lack of Ambiguity

■ The defendants' second argument is that the requirements of the personal conveyance clause are clear and unequivocal and that the language is unambiguous. To bolster their position that the requirements are clear, the Underwriters offer the testimony of Robert Danilin, the independent contractor, who had possession of the diamonds when they were lost. During the course of two investigatory interviews, Danilin stated that he normally attached the jewelry bag to his leg; that, in this case, he did not, but touched the bag during dinner; and that he did not leave the bag at home because he believed that if he did so the diamonds would not be covered. While one can easily reason that the diamonds would not be in the "close personal custody and control" of Danilin if they were left in his house, it is quite another to say, unequivocally, that they were not in his "close personal custody and control" when they were placed next to him in a restaurant, where he could touch them.

The Personal Conveyance Clause contains no list of requirements for coverage. It does not say that the insured items must be attached to the body of the insured or his agent when in transit, which the defendants claim would have satisfied the clause. The Underwriters offer nothing to support this interpretation, nor do they present any evidence that attaching the diamond bag to the body is a well-known custom that

would by implication be included in the clause. Their argument is further undermined by the fact that other parts of the policy do list specific requirements. For example, in the Hotel/Motel Clause, which follows the Personal Conveyance Clause, the requirements for coverage at night are clearly listed. The insured items must either be locked in the hotel safe or safety deposit box and never be in the hotel room unattended. The Personal Conveyance Clause does not meet this same level of specificity. If the defendants expected "close personal custody and control" to mean something in particular, they should have clearly enumerated their requirements, as they did in the Hotel/Motel Clause.[1]

Additionally, the Underwriters' reliance on *Zimring v. English–American Ins. Co.,* 91 A.D.2d 889, 457 N.Y.S.2d 504 (Civ.Ct. 1983) to prove that the requirements of the Personal Conveyance Clause are clear, is misplaced. In *Zimring,* the court found that the insured did not meet the standard of "personal supervision" when he left his jewelry in the trunk of his car and was subsequently stolen. *Zimring* is inapposite for two reasons. First, the loss in that case resulted from the *purposeful* placement of the jewelry in a car, while the loss of Saritejdiam's diamonds stemmed from the *inadvertent* mislaying of the gems in a restaurant. Secondly, the Saritejdiam policy specifically states in subsection seven of the "Exceptions" section that coverage will not extend to valuables placed in a road vehicle and left "unattended." The ambiguity that plagues "close personal custody and control" does not attach itself to "placed in a road vehicle and left unattended." The precision of language and requirements in the unattended vehicle exception and the Hotel/Motel Clause are not germane to this case; Saritejdiam's loss did not occur in a car or hotel, both of which are locations subject to very explicit requirements. The defendants drafted the

policy and had the opportunity to set the parameters and standards for each situation to be covered. This very control over the drafting of policy terms is the rationale behind construing ambiguities in favor of the insured. *Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co.,* 353 F.2d 946, 951 (2d Cir.1963).

Lastly, the defendants argue that the insurance policy cannot be construed to produce an absurd result, and it is their position that the plaintiff's interpretation leads to one. They assert that it would be absurd to interpret the policy as denying coverage when the diamonds are left in a locked car or hotel room, but covering diamonds that are left, out in the open, in a restaurant. Unfortunately for the Underwriters, it is the "insurer [who] has the burden of establishing that 'the words and expressions used not only are susceptible of [the construction that the insurer advocates] but that it is the only construction that can fairly placed thereon.'" *Bronx Savings Bank v. Weigant,* 1 N.Y.2d 545, 551, 154 N.Y.S.2d 878, 136 N.E.2d 848 (1956) (*quoting Hartol Prods. Corp. v. Prudential Ins. Co.,* 290 N.Y. 44, 49, 47 N.E.2d 687 (1943)). As stated above, both the unattended vehicle exception and the night time element of the Hotel/Motel Clause are not amenable to more that one reasonable construction. The Personal Conveyance Clause, lacking the specificity of the other sections, can be construed in several rational ways. It was not absurd of Saritejdiam to assume that, as long as the diamonds were with their agent, they would be covered for any loss that ensued. What is less plausible is the defendants' reading of their "all-risk" policy. In their view, once Danilin left the diamonds at the restaurant, he no longer had "close personal custody and control" of the diamonds and coverage was excluded. It was at precisely this point, however, that Danilin unintentionally *lost* them. If one accepts the defendants' interpretation of this poli-

---

1. Defendants rely on Danilin's testimony that he thought that "close personal custody and control" meant that the insured or its agent must have physical contact with the diamonds at all times as evidence of the unambiguous meaning of the phrase. There is no evidence, however, to show that Danilin had ever read the policy or that he had the necessary knowledge and expertise to interpret it, making his view less than authoritative.

cy, one would be hard pressed to come up with a situation where an insured party could lose something in transit and still be covered.

### III. *Conclusion*

After reviewing the defendants' materials opposing the plaintiff's motion for summary judgment, it is the opinion of this Court that they have failed to meet their burden under Rule 56(e). Summary judgment is granted in favor of the plaintiff. Any discovery necessary to ascertain the value of plaintiff's loss is to commence no later than 10 days following the receipt of this Order by the parties and is to be completed 30 days later.

It Is So Ordered.