Richard S. Slater *vs.* United States Fidelity &
Guaranty Company.

Hampden.    January 8, 1979. — March 23, 1979.

Present: Keville, Rose, & Armstrong, JJ.

*Insurance*, "All risk" policy, Embezzlement. *Words*, "Occurrence."

A loss sustained by an orthodontist as a result of embezzlement by his
   receptionist was within the coverage of an all risk "Inland Marine,
   Physicians' and Surgeons' Equipment Floater" insurance policy
   with an extension of coverage endorsement for loss of money in the
   premises for an amount not exceeding $250 in any one occurrence.
   [282-284]
Under the terms of an insurance policy which limited the insurer's
   liability for loss of money "in any one occurrence" to an amount not
   exceeding $250, an insured who sustained a loss totalling $9,000 as
   a result of a course of embezzlement by an employee over a period
   of time could only recover $250, even though no individual theft by
   the employee exceeded that amount. [284-285]

Contract. Writ in the Superior Court dated December
1, 1972.

The case was reported to the Appeals Court by *Smith,*
J.

*Robert L. Dambrov* for the plaintiff.

*William G. White* for the defendant.

Rose, J. This case is reported to us by a judge who made
no decision thereon. It involves construction of a provi-
sion in an "all risk" inland marine insurance policy. The
parties submitted a statement of agreed facts. See
Mass.R.Civ.P. 64, 365 Mass. 831 (1974).

During the years 1971 and 1972 the plaintiff, an ortho-
dontist, was the named insured under an "Inland Marine,
Physicians' and Surgeons' Equipment Floater" insurance
policy. Included as part of that policy was an "Extension

of Coverage Endorsement, PS 1415" which provided coverage in paragraph C for loss of money "in the premises" for an amount not exceeding $250 "in any one occurrence."[1] During the period January, 1971, through March, 1972, the plaintiff's employee, a receptionist, embezzled funds totalling $9,000 from the plaintiff "pursuant to a plan or scheme," with no individual theft exceeding $250. At all times relevant to this case the policy and endorsement were in full force and effect, and the plaintiff had complied with all the conditions of the policy. After discovering his losses, the plaintiff seasonably filed a claim report, notice, and proof of loss with the defendant. The defendant denied liability.

We are asked to determine, first, whether any loss alleged by the plaintiff comes within the coverage afforded under the terms of paragraph C of the Extension of Coverage Endorsement; and second, whether each loss sustained by the plaintiff on each separate occasion constituted "one occurrence" within the provisions of the policy under paragraph C.

1. The policy is the "all risk" type of inland marine policy and insures against "all risks of loss or damage to the property insured," subject to certain enumerated exclusions, with coverage provided in the Extension of Coverage Endorsement for "loss of . . . money . . . in the premises." Insurance policies of this type have been held to include coverage for a variety of risks not ordinarily contemplated, and recovery is generally allowed for all losses of a fortuitous nature, absent fraud or other intentional conduct of the insured, unless the policy contains a speci-

---

[1] Paragraph C of the "Extension of Coverage Endorsement, PS 1415" provided as follows: "Currency, Money and Stamps: This policy covers [,] for an amount not exceeding $250. in any one occurrence, loss of currency, money and stamps in the premises, and as respects currency and money while being conveyed outside the premises of the Insured to bank of deposit and stamps from place of purchase to the Insured's premises while being conveyed either by the Insured or an employee of the Insured."

fic exclusion precluding coverage. See e.g., *Standard Elec. Supply Co.* v. *Norfolk & Dedham Mut. Fire Ins. Co.,* 1 Mass. App. Ct. 762, 763-764 (1974); *Betty* v. *Liverpool & London & Globe Ins. Co.,* 310 F.2d 308, 310-311 (4th Cir. 1962); *Sun Ins. Office, Ltd.* v. *Clay,* 133 So.2d 735, 739 (Fla. 1961); see generally Annot., 88 A.L.R.2d 1122, 1125 (1963); 11 & 13 Couch, Insurance §§ 42:149, 42:167, & 48:138 (2d ed. 1963 & 1965). Such policies may, for example, exclude losses resulting from theft, dishonesty, or conversion by employees of the insured. See *Chase Rand Corp.* v. *Central Ins. Co.,* 152 F.2d 963, 963-964 (2d Cir. 1945); *Advance Piece Dye Works, Inc.* v. *Travelers Indem. Co.,* 64 N.J. Super. 405, 407 (1960); Annot., 88 A.L.R.2d, *supra* at 1132.

In the present case, we apply the rule that an insurance policy, provisions of which are plainly and definitely expressed, shall be enforced in accordance with the terms which the parties have used, to be taken in their ordinary and usual sense. See *Hyfer* v. *Metropolitan Life Ins. Co.,* 318 Mass. 175, 179 (1945); *Sherman* v. *Employer's Liab. Assur. Corp.,* 343 Mass. 354, 356 (1961); *Bulyga* v. *Underwriters at Lloyd's, London,* 1 Mass. App. Ct. 359, 362-363 (1973). The plaintiff's loss, without question of a fortuitous nature, falls squarely within the coverage afforded under the terms of the policy, which contains no exclusion from coverage applicable to these circumstances involving loss of money in the plaintiff's premises through embezzlement by his employee.

The defendant argues, in opposition to this conclusion, that it is unreasonable to suppose coverage for this risk was contemplated by the parties, given the low premium paid by the plaintiff for the extension of coverage, and given the availability of fidelity guaranty insurance policies for insurance against this type of risk. We find these arguments immaterial to the key issue of interpretation of the express and unambiguous terms employed by the parties in their contract. We therefore answer the first question reported in the affirmative, ruling that the

plaintiff was protected under the terms of paragraph C of the Extension of Coverage Endorsement against the loss sustained here, and is entitled to recover.

2. In the second question reported to us we are asked to determine whether the term "any one occurrence"[2] applies to each instance of loss sustained by the plaintiff on each separate occasion of theft. If so, the plaintiff would recover the full amount of his losses totalling $9,000 since, as indicated earlier, no individual theft by the plaintiff's employee during the fifteen month period exceeded $250, the insurer's maximum liability for loss of money "in any one occurrence." If, however, the term "any one occurrence" applies to the entire course of embezzlement by the employee, the plaintiff's recovery would be limited to $250. We have found no authority on point in Massachusetts on this issue, but, based upon our reading of the terms of the insurance policy and our review of analogous cases in other jurisdictions, we are persuaded that the latter interpretation is the correct one and, accordingly, that the insurer's liability should be limited to $250.

The word "occurrence" is one of common usage and is not, in and of itself, ambiguous. See *Truck Ins. Exch.* v. *Rohde*, 49 Wash. 2d 465, 473 (1956). In its "usual and ordinary sense" (see *Sherman* v. *Employer's Liab. Assur. Corp., supra* at 356; *Bulyga* v. *Underwriters at Lloyd's, London, supra* at 363; contrast *Bates* v. *John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. 823 [1978]), an "occurrence" signifies any incident or event, especially one that happens without being intended or expected from the standpoint of the insured. See *Truck Ins. Exch.* v. *Rohde, supra* at 469. In cases involving general liability or indemnity policies, courts have interpreted the word 'occur-

---

[2] Courts which have construed similar language in general liability policies have made no distinction between such terms as "each," "a single," "one," "any one," "any," or "an" occurrence. See Annot., 55 A.L.R.2d 1300, 1301 (1957), and cases collected therein.

rence' as denoting a process (see *Deodato* v. *Hartford Ins. Co.*, 143 N.J. Super. 396, 402 [1976], and cases cited, aff'd 154 N.J. Super. 263 [App. Div. 1977]), a period of time (*Grand River Lime Co.* v. *Ohio Cas. Ins. Co.*, 32 Ohio App. 2d 178, 185 [1972]), an entire sequence of events giving rise to an injury (*Natural Soda Prod. Co.* v. *Los Angeles*, 23 Cal. 2d 193, 203 [1943], cert. denied, 321 U.S. 793 [1944]), or as an accident including continuous or repeated exposure to conditions resulting in injury (*Southern Intl. Corp.* v. *Poly-Urethane Indus., Inc.*, 353 So. 2d 646, 648 [Fla. App. 1977]; contrast *Ciavarella* v. *Hartford Acc. & Indem. Co.*, 85 Misc. 2d 1042, 1043 [N.Y. Sup. Ct. 1976]), rather than a momentary or sudden event (see *Massachusetts Turnpike Authy.* v. *Perini Corp.*, 349 Mass. 448, 456-457 [1965]).

Applying the word "occurrence" in its usual sense, we believe that in the instant case the systematic course of embezzlement of funds by the insured's employee over a period of time pursuant to what the parties stipulated was a single scheme or plan constituted but "one occurrence." This conclusion accords with the prevailing rule in Massachusetts that a series of larcenous takings actuated by a single intent or pursuant to a general plan or scheme constitutes a single larceny. See *Commonwealth* v. *England*, 350 Mass. 83, 86-88 (1966); *Commonwealth* v. *Pina*, 1 Mass. App. Ct. 411, 415 (1973). Cf. *Commonwealth* v. *Stasiun*, 349 Mass. 38, 45 (1965). Since the successive acts of the employee causing the insured's loss, taken together, constituted "one occurrence," we hold that the insurer's liability under the terms of the policy is limited to $250. The second question reported is therefore answered in the negative, and judgment is to enter in accordance with this opinion.

*So ordered.*