### RICHARD S. SLATER *vs.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

Hampden. November 5, 1979. — February 15, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Insurance,* "All risk" policy, Embezzlement. *Words,* "Occurrence."

A policy of insurance against "all risks of loss of or damage to the property insured," together with an endorsement for "loss of currency, money and stamps in the premises" covered the insured's loss of money resulting from embezzlement by an employee. [803]

Under a policy of insurance which covered "for an amount not exceeding $250 in any one occurrence, loss of currency, money and stamps in the premises," each theft in a series of thefts by an employee over a period of fifteen months constituted "one occurrence" within the meaning of the policy. [804-809]

CONTRACT. Writ in the Superior Court dated December 1, 1972.

The case was reported to the Appeals Court by *Smith,* J. The Supreme Judicial Court granted a request for further appellate review.

*Robert L. Dambrov* for the plaintiff.

*William G. White* for the defendant.

QUIRICO, J. This is an action of contract in which we are asked to interpret language in an insurance policy and an endorsement thereto. The parties agreed to all the material facts, and at their request a judge of the Superior Court reported the case to the Appeals Court for determination with-

out making any decision thereon. G. L. c. 231, § 111. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). After a decision by the Appeals Court in *Slater* v. *United States Fidelity & Guar. Co.*, 7 Mass. App. Ct. 281 (1979), we granted further appellate review on the application of the plaintiff. G. L. c. 211A, § 11.

The issues in the case as stipulated by the parties appear in the margin below.[1] They may be summarized as follows: (1) whether the policy issued by the defendant to the plaintiff covers losses resulting from the theft of money by an employee of the plaintiff, and (2) whether each theft in a series of thefts by the employee over a period of fifteen months constitutes "one occurrence" within the meaning of the policy. We answer both questions affirmatively.

The plaintiff (Dr. Slater) is an orthodontist who insured his office property with the defendant (USF&G). The policy was an Inland Marine "Physicians' and Surgeons' Equipment Floater," dated January 30, 1967. It provided insurance against "[a]ll risks of loss of or damage to the property insured except as hereinafter provided." The enumerated exceptions were for losses or damage due to wear and tear, insects, electricity, "hostile or warlike action," and nuclear reaction or radiation. Also on January 30, 1967, the parties attached an "Extension of Coverage Endorsement." Item "C" of this endorsement reads: "C. Currency, Money and Stamps: This policy covers for an amount not exceeding $250 in any one occurrence, loss of currency, money and stamps in the premises, and as respects currency and money while being conveyed outside the premises of the Insured to bank of deposit and stamps from place of purchase to the Insured's premises while being conveyed either

---

[1] "1. Whether any loss alleged by the Plaintiff comes within the coverage afforded under the terms of Paragraph C. entitled 'Currency, Money and Stamps,' of the Extension of Coverage Endorsement, PS 1415.

"2. Whether each loss sustained by the Plaintiff on each separate occasion constituted 'one occurrence' within the provisions of the insurance policy under paragraph C. entitled 'Currency, Money and Stamps' of the Extension of Coverage Endorsement, PS 1415."

by the Insured or an employee of the Insured." The additional premium for this and other coverage extension was stated in the endorsement to be $7.50. Neither the policy nor the endorsement contained an exclusion for losses caused by theft, and neither defined "occurrence." The policy also included coverage for damage to the premises "directly resulting from theft or any attempt thereat, provided that, with respect to the premises, the Insured is the owner of such premises or is legally liable for such damage . . . ."

During 1971 and 1972 a receptionist employed by Dr. Slater embezzled a total of $9,000 of the Doctor's funds. The parties agreed that the money was taken "pursuant to a plan or scheme" and that no one theft exceeded $250. Dr. Slater discovered his losses in March, 1972, and immediately notified USF&G. At all material times the policy was in full effect and Dr. Slater had complied with all its conditions.

1. The policy and the endorsement must be read together. *Adamaitis* v. *Metropolitan Life Ins. Co.*, 295 Mass. 215, 219 (1936). For the reasons stated in the opinion of the Appeals Court, we agree that the "all risks" coverage provision of the policy covered loss by theft, including embezzlement. The insurer argued before this court that an "all risks" policy does not insure the fidelity of employees, and that other types of insurance are available to cover this type of loss. Language in an insurance policy must be given its ordinary meaning, however, and construed in the sense that the insured will reasonably understand to be the scope of his coverage. *MacArthur* v. *Massachusetts Hosp. Serv., Inc.*, 343 Mass. 670, 672 (1962). *August A. Busch & Co.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959). *Panesis* v. *Loyal Protective Life Ins. Co.*, 5 Mass. App. Ct. 66, 72 (1977). Had USF&G intended to exclude losses incurred by reason of embezzlement from the coverage of the policy, it "could have employed plain language so as to be readily understood." *Bates* v. *John Hancock Mut. Life Ins. Co.*, 6 Mass. App. Ct. 823, 824 (1978). We hold, as did the Appeals Court, that the policy, reasonably construed, covered the insured's loss of money resulting from the theft thereof by his employee.

2. The Appeals Court held that the $9,000 loss was one "occurrence" and that therefore the insurer's liability should be limited to $250. *Slater, supra* at 284. It relied on decisions from other jurisdictions interpreting the word "occurrence" "as denoting a process . . . rather than a momentary or sudden event." *Id.* at 285. Furthermore, it held that the "single scheme or plan constituted but 'one occurrence,'" and drew analogy to the criminal law concept that "a series of larcenous takings actuated by a single intent or pursuant to a general plan or scheme constitutes a single larceny." *Id.*

We take the opposite view based on our reading of many decisions from other jurisdictions which have interpreted policies limiting insurers' liability for one "occurrence" or "accident." We believe that the use of the words "one occurrence" in the policy, without giving a definition or other aid to help determine the sense in which the words were used, gives rise to an ambiguity which must be construed against the insurer, who wrote the policy. *Massachusetts Turnpike Auth.* v. *Perini Corp.* 349 Mass. 448, 454 (1965). *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431 (1965). Accord, *Saint Paul-Mercury Indem. Co.* v. *Rutland*, 225 F.2d 689, 691 (5th Cir. 1955); *Elston-Richards Storage Co.* v. *Indemnity Ins. Co.*, 194 F. Supp. 673, 679 (W.D. Mich. 1960), aff'd, 291 F.2d 627 (6th Cir. 1961); *Wilkinson & Son* v. *Providence Wash. Ins. Co.*, 124 N.J. Super. 466, 469 (1973).

Like the Appeals Court and the parties, we have found no Massachusetts case dealing with the question what constitutes one "occurrence" within the meaning of an insurance policy limiting liability for any one occurrence. See *Slater, supra* at 284. The very fact that there have been so many decisions in other jurisdictions dealing with the question in a wide variety of factual settings, however, supports our conclusion that the term is indeed ambiguous.

Before discussing these cases, we observe that we are not faced here with a question of notice. The parties agree that Dr. Slater did not discover his loss until $9,000 was missing,

and promptly notified USF&G. There is no evidence in the record that he was negligent in failing to discover the thefts earlier, nor does USF&G raise this as an issue.[2] The issue at this point is solely whether Dr. Slater's total loss of $9,000 as the result of his employee's theft of sums of less than $250 on each of many occasions constituted "one occurrence," within the meaning of the policy, or whether each theft is a separate "occurrence."

The cases from other jurisdictions dealing with this question seem to turn on an analysis of three factors: causation, the resulting event or events (particularly the time and distance which separate them), and the subject matter of the insurance policy.[3]

If there is one, uninterrupted proximate cause which results almost immediately in more than one impact or event, courts generally find there is one "accident" or "occurrence."[4] In *Truck Ins. Exch.* v. *Rohde*, 49 Wash. 2d 465 (1956), the insured's car went out of control, crossed the center line, and struck three motorcycles in rapid succession. The court held that there was one "accident" or "occurrence," stressing that one negligent act was the proximate

[2] The notice provision of the policy requires that "[t]he insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss."

[3] Courts differ in their stated rationales. Many accept the dichotomy proposed by the author of Annot., 55 A.L.R.2d 1300 (1957), that a court may look either to the "cause" of the accident or the "effect." As the classic example of the former approach the author cites *Saint Paul-Mercury Indem. Co.* v. *Rutland*, 225 F.2d 689 (5th Cir. 1955), discussed in the text. As an example of the "effect" approach, the author cited *Anchor Cas. Co.* v. *McCaleb*, 178 F.2d 322 (5th Cir. 1949), where the court stated that the word "accident" must be construed "from the point of view of the person whose property was injured." *Id.* at 324. The Fifth Circuit repudiated this language in *Saint Paul, supra* at 693.

[4] Courts have repeatedly stressed that they do not distinguish between the words "accident" and "occurrence," or among the words "any," "anyone," "each," or "one." See Annot. 55 A.L.R.2d 1300, 1301 (1957), and cases cited therein.

cause of the three impacts, and that the insured's automobile remained out of control the entire time. Similarly, in *Bacon v. Miller*, 113 N.J. Super. 271, 276 (1971), two automobiles collided on a street and one went onto a sidewalk and hit three pedestrians. In holding that only one accident had occurred, the court stressed that the insured "did *not* straighten out after the accident but continued on an uninterrupted course onto the sidewalk," and that the entire event took only a few seconds and occurred within an area of eighteen to twenty-five feet. Other courts have agreed that there is but one accident or occurrence when there is an unbroken, immediate chain of events with a single, continuous proximate cause. E.g., *Barrett v. Iowa Nat'l Mut. Ins. Co.*, 264 F.2d 224 (9th Cir. 1959) (fire damaged apartments of seven tenants); *Hyer v. Inter-Ins. Exch. Club*, 77 Cal. App. 343 (1926) (auto of insured hit oncoming car and caused it to hit third car); *Olsen v. Moore*, 56 Wis. 2d 340, 350 (1972) (car crossed median and hit two other cars; "virtually no time or space interval between the two impacts").

Where one impact or event causes immediate damage to several persons or properties, courts also generally find one accident or occurrence. E.g., *Saint Paul-Mercury Indem. Co. v. Rutland*, 225 F.2d 689 (5th Cir. 1955) (insured's truck collided with freight train causing damage to sixteen cars and property of fourteen owners); *Denham v. LaSalle-Madison Hotel Co.*, 168 F.2d 576 (7th Cir.), cert. denied, 355 U.S. 871 (1948) (hotel fire caused losses to several guests); *McKeithen v. S.S. Frosta*, 430 F. Supp. 899 (E.D. La. 1977) (tanker owned by insured collided with ferry, causing death or injury to several persons); *Tri-State Roofing Co. v. New Amsterdam Cas. Co.*, 139 F. Supp. 193 (W.D. Pa. 1955) (insured's employee upset tar pot onto roof, causing fire which spread and burned several buildings); *Allied Grand Doll Mfg. Co. v. Globe Indem. Co.*, 15 App. Div. 2d 901 (N.Y. 1962) (faucet left open, damaging several apartments below).

On the other hand, when the cause is interrupted, either by an independent cause, or by the actor regaining control

over the causing factor, courts usually find that there is more than one "occurrence" or "accident." In *Liberty Mut. Ins. Co.* v. *Rawls*, 404 F.2d 880 (5th Cir. 1968), the insured, while being pursued by policemen, hit one automobile, proceeded in the same direction for some seconds, and hit a second automobile. In finding two "accidents," the court noted that the two impacts were separated "by both time and distance" and that the insured "had control of his vehicle after the initial collision." *Id.* at 880-881. In *Elston-Richards Storage Co.* v. *Indemnity Ins. Co.*, *supra,* a defective forklift truck damaged several appliances over a nine-month period. In holding that each incident was a separate "occurrence," the court stated that the word "occurrence" is not ambiguous as used in the policy,[5] and was certainly not intended to apply collectively to events or occurrences happening many months apart. *Elston-Richards, supra* at 682. In *Lombard* v. *Sewerage & Water Bd.*, 284 So. 2d 905 (La. 1973), a pipe-laying project lasting more than a year caused damage to various houses at different times. The court held that there were several accidents. Accord, *Arthur A. Johnson Corp.* v. *Indemnity Ins. Co.*, 6 App. Div. 2d 97 (1958), aff'd, 7 N.Y.2d 222 (1959) (two accidents occurred when workers excavated, and rainfall caused pressure resulting in collapse of two buildings fifty minutes apart); *Kuhn's of Brownsville, Inc.* v. *Bituminous Cas. Co.*, 197 Tenn. 60 (1954) (excavation of insured's property resulted in collapse of adjoining building, then another building).

Cases which appear not to apply the principle that where there are several impacts or events, the cause must be uninterrupted if the impacts are to be considered one accident or

---

[5] By finding no ambiguity, the *Elston-Richards* court avoided the rule that ambiguities are to be construed against the insurer. The holding of the case that there were several occurrences was unfavorable to the insured, because the policy applied a deductible rather than a liability limit to each occurrence, and no appliance was damaged in excess of the deductible. *Elston-Richards Storage Co.* v. *Indemnity Ins. Co.*, 194 F. Supp. 673, 674-677 (W.D. Mich. 1960), aff'd, 291 F.2d 627 (6th Cir. 1961).

occurrence, often do so in order to effectuate the rule that ambiguities in insurance policies must be construed in favor of the insured. For example, in *Wilkinson & Son* v. *Providence Wash. Ins. Co.*, 124 N.J. Super. 466, 472 (1973), the insured's employee, while removing tiles in an apartment building, damaged carpeting in thirty-four separate apartments. The court held this to be one occurrence, stating simply that "[t]he acts imposing liability upon [the insured] were committed . . . in the performance of a single and continuous operation completed within the course of one, or two, working days." The policy in *Wilkinson* applied a deductible amount rather than a liability limit to each occurrence, however, so that it was in the interests of the insured that the court find only one occurrence (and hence only one deductible amount). The *Wilkinson* court relied on two cases, both with deductible clauses, where it was held that there was only one accident or occurrence: *Haerens* v. *Commercial Cas. Ins. Co.*, 130 Cal. App. 2d Supp. 892 (1955) (employee damaged several window panes in building) and *Weissblum* v. *Glens Falls Ins. Co.*, 31 Misc. 2d 132 (City Ct. 1961) (189 glass lights broken during repair work), rev'd on other grounds, 40 Misc. 2d 964 (N.Y. Sup. Ct. 1963). These cases support the rule that if a policy contains an ambiguity it should be construed against the insurer who wrote the policy, and the view that courts should look to what loss or liability the parties intended to insure against.

Another case which focused on the subject matter of the policy is *Transamerica Ins. Co.* v. *Keown*, 451 F. Supp. 397 (D.N.J. 1978). An attorney-trustee interpreted the word "securities" in a will provision to include real estate, and he purchased several properties with trust money. The policy covered professional negligence, and the court held that only one negligent act — misinterpretation of the word "securities" — had caused the damage (loss of value of certain properties) within the meaning of the policy. *Id.* at 402-403.

In the present case, the "occurrence" which occasioned Dr. Slater's losses was not the common scheme, and the subject matter of the policy was losses, not schemes. Although

the receptionist may have taken the money pursuant to a common scheme, each act of appropriating money for her own use necessarily was preceded by a decision to adhere to and effectuate that scheme, which could have been interrupted at any time before the $9,000 was taken. The scheme, without more, could not have caused the losses. Cf. *General Cas. Co.* v. *Gunion,* 99 A.2d 643, 646 (D.C. Mun. Ct. App. 1953) (separate acts of larceny by trick treated separately for insurance purposes; "[t]here is no basis for treating several losses occurring on separate occasions as one merely because one scheme is used to bring them about"). Had these losses been the result of independent acts by different parties, undiscovered until the $9,000 was missing, USF&G probably would not contest payment (and of course could apply the $250 liability limit to each act of theft). The insurer chooses the words of a policy, and "whichever of two warranted interpretations . . . best effectuates the main manifested design of the parties is to be favored." *Rezendes* v. *Prudential Ins. Co.,* 285 Mass. 505, 511 (1934). *King* v. *Prudential Ins. Co.,* 359 Mass. 46, 50 (1971). *Joseph E. Bennett Co.* v. *Fireman's Fund Ins. Co.,* 344 Mass. 99, 103-104 (1962).

Pursuant to our reading of analogous cases, and to the rule that ambiguities are to be construed in favor of the insured, we hold that each act of embezzlement in this case was a separate "occurrence" within the meaning of the policy in question. Since the parties have agreed that none of the many separate thefts exceeded the liability limitation of $250, USF&G must pay the entire loss on each "occurrence," that total amount being $9,000. The stipulation makes no reference to interest, and we do not deal with it — we leave it as a matter to be decided by the trial court.

This case is remanded to the Superior Court for further proceedings, including entry of judgment for the plaintiff, consistent with this opinion.

*So ordered.*