[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #122 AND MOTION FOR SUMMARY JUDGMENT #123
This case, involving cross motions for summary judgment, arises out of a dispute over the scope of insurance coverage for losses the insured incurred as a result of employee theft. The plaintiff, Shemitz Lighting, Inc., a corporation which was engaged in the sale of lighting fixtures, is the insured under a commercial insurance policy issued by the defendant, Hartford Fire Insurance Company. On or about November 1, 1993, the defendant issued a policy to the plaintiff for a one-year term that ran from November 1, 1993 to November 1, 1994. In November of 1994, the defendant renewed its policy with the plaintiff for an additional one-year term that ran from November 1, 1994 to November 1, 1995. The policy, entitled "Business Insurance Policy," is a property damage and loss policy. It provided coverage for damage to the building and personal property of the business as well as a number of optional coverages. One of the optional coverages that the plaintiff purchased was for losses that CT Page 13629 result from employee dishonesty. The declarations page of the policy limited coverage to $10,000 for "each occurrence" of employee dishonesty.
Sometime in August 1993, the plaintiff hired Donna Borman (Borman) to work as the company's bookkeeper. Her job duties included keeping books and records, preparing payroll and reconciling bank account statements. On or about July 14, 1995, the plaintiff's principal, Norman Shemitz (Shemitz), discovered that Borman had been writing unauthorized checks. Shemitz learned that, beginning sometime near February 1994 and continuing into 1995, Borman issued sixty-three checks from the plaintiff's commercial and payroll accounts made payable to herself and to others by forging Shemitz's signature on the checks. On July 21, 1995, Shemitz notified the defendant, its insurer, that the business suffered a $146,000 loss due to employee fraud. On September 13, 1995, the plaintiff provided the defendant with proof of the loss caused by Borman's forgeries. Shemitz later discovered that Borman had also diverted to herself over $56,000 in third-party checks that had been made payable to the plaintiff and were meant to be deposited into the plaintiff's checking accounts. Accordingly, on September 22, 1995, the plaintiff provided the defendant with a supplemental proof of loss indicating that its losses now totaled $209,605.33.
The plaintiff commenced this action by writ, summons and complaint on December 28, 1995. The complaint is in three counts. Count one sets forth a claim for breach of contract in which the plaintiff alleges that the defendant has failed to meet its obligations to the plaintiff because pursuant to the policy the defendant is required to provide coverage for each incidence of employee dishonesty and the defendant has failed to do so. Count two alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110g et seq. and count three alleges a violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq. The plaintiff alleges that, because the defendant unreasonably delayed paying the plaintiff's claims and because the defendant has a trade practice of failing to promptly process and settle claims and of conducting elaborate investigations for the purpose of delaying or denying payment of meritorious claims, the defendant has violated CUTPA and CUIPA.
On May 30, 1996, the defendant moved to strike counts two and three, the CUTPA and CUIPA claims, for failure to state claims upon which relief can be granted. The plaintiff objected to the defendant's motion and both parties filed supporting memoranda of law. The court, Rush, J., denied the defendant's motion to strike on July 25, 1996, finding that the plaintiff sufficiently alleged facts to sustain causes of action under both CUTPA and CUIPA. On September 12, 1996, the defendant filed an answer and a CT Page 13630 special defense. In its answer, the defendant denies that it has unreasonably delayed or failed to pay the plaintiff's claim in accordance with the policy. By way of special defense, the defendant alleges that it satisfied its duty under the policy when it tendered payment of $10,000 to the plaintiff, which the defendant claims is the policy limit. On September 26, 1996, the plaintiff replied to the defendant's special defense by denying all of the defendant's allegations. On or about January 22, 1998, the defendant sent the plaintiff a check for $10,000, which the defendant claims represents the full amount due the plaintiff pursuant to the policy. The plaintiff agreed to accept the check but at the same time reserved its right to pursue additional amounts from the defendant.
On June 30, 1999, pursuant to Practice Book § 17-44 et seq., the plaintiff filed a motion for summary judgment, along with a supporting memorandum of law. The plaintiff filed a clarified motion for summary judgment on August 3, 1999. The clarified motion adopts the memorandum of law it filed on June 30, 1999 and seeks summary judgment as to count one of the complaint on the ground that there is no genuine issue of material fact that the employee theft provision of the insurance policy issued by the defendant provides coverage for losses sustained as a result of each separate act of embezzlement by an employee. The plaintiff attached copies of the following documents to its motion and memorandum: the insurance policy issued by the defendant to the plaintiff for the policy period November 1, 1993 to November 1, 1994; the policy declarations pages for the policy period November 1, 1993 to November 1, 1994; the policy declarations pages and extension schedule of underlying insurance policies for the period November 1, 1994 to November 1, 1995; a preprinted claim form, which was signed by Norman Shemitz, president of the plaintiff corporation, Shemitz Lighting, Inc., and notarized by the plaintiff's counsel, along with supporting documentation of loss; a January 22, 1998 letter from counsel for the defendant to counsel for the plaintiff regarding the $10,000 payment; and the June 15, 1999 affidavit of Norman Shemitz in which Shemitz avers that, based on the policy language and the purpose for which he purchased the theft coverage, it was his understanding that the policy would pay up to $10,000 for each separate act of embezzlement.
On August 29, 1999, pursuant to Practice Book § 17-44 et seq., the defendant filed a cross motion 1for summary judgment as to all claims set out in the plaintiff's complaint. The defendant's motion is accompanied by a supporting memorandum of law. The defendant moves on the ground that there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law because Borman's acts amount to one occurrence for purposes of coverage, it completely discharged its duty by paying to the plaintiff the $10,000 per occurrence limit, and its actions CT Page 13631 do not provide grounds for recovery under CUTPA or CUIPA. The defendant attached copies of the following documents to its motion and memorandum: the declaration page of the insurance policy for the policy period November 1, 1993 to November 1, 1994; a September 20, 1995 letter from Francis G. Bogdan (Bogdan) of the Hartford's claim department to counsel for the plaintiff; a September 22, 1995 letter from the plaintiff's counsel to Bogdan; a September 27, 1995 letter from Bogdan to the plaintiff's counsel; and portions of the deposition of Bogdan, which was taken on September 18, 1997.
 DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Citations omitted; internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 385, 752 A.2d 503
(2000). Even if the nonmoving party produces no evidence in opposition to the motion, the motion will be denied if the movant's evidence fails to show both that there is no genuine issue of fact and that the movant is entitled to judgment as a matter of law. Walker v. Lombardo,2 Conn. App. 266, 269, 477 A.2d 168 (1984).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ."Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. . . ." (Citations omitted; internal quotation marks omitted.) Morascini v. Commissioner of Public Safety,236 Conn. 781, 808, 236 A.2d 1340 (1996). "The test is whether a party would be entitled to a directed verdict on the same-facts." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, supra,252 Conn. 201. "[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. . . . (Citations omitted; internal quotation marks omitted.) Morascini v. Commissioner of Public Safety, supra, 809.
The parties do not dispute that the policy provides coverage for losses sustained due to employee theft, rather, their disagreement arises over CT Page 13632 the limits of coverage. The parties present this issue as a question of law for the court. On the one hand, the plaintiff claims that, because each individual incidence of employee dishonesty constitutes an "occurrence," each of Borman's thefts, which span two policy periods, are covered up to $10,000 per theft. The defendant, on the other hand, claims that all of the acts of an employee engaged in many thefts over a continuous period of time are a "series of related acts," which is to be considered one "occurrence" pursuant to the policy.
In support of its motion for summary judgment, the plaintiff argues that, because the policy does not define "occurrence" and because the policy language, "series of related acts," which is meant to explain what constitutes an "occurrence" is ambiguous, the policy should be construed in favor of the plaintiff as a matter of law. The plaintiff further contends that Borman's thefts cannot constitute one "occurrence" because each theft caused a separate and distinct loss to the plaintiff and the courts have held that losses brought about by separate acts or causes constitute separate "occurrences." The defendant disagrees and asserts that the plaintiff's motion should be denied because the policy language as to what constitutes an "occurrence" is not ambiguous and, therefore, the policy should be enforced according to its terms. The defendant further argues that, because Borman's entire course of conduct is one "occurrence" pursuant to the policy, the defendant discharged its duty by paying $10,000, the per "occurrence" limit, to the plaintiff.
In its motion, the defendant argues that, under the plain language of the policy, the total of the plaintiff's loss was caused by one occurrence. The defendant further contends that a "noncumulation clause" contained within the policy works in conjunction with the "occurrence" provision to limit the defendant's liability to $10,000 not just for the policy period, but for the entire two year coverage period. The defendant claims that because it tendered payment of $10,000 to the plaintiff, it completely discharged its duty to the plaintiff and is therefore entitled to judgment as a matter of law as to count one. It is the defendant's contention that its motion should also be granted as to counts two and three because, one, the third count of the plaintiff's complaint does not allege the general business practice necessary to prevail on a CUIPA claim, and two, because the plaintiff cannot maintain a CUTPA claim absent an underlying violation of CUIPA. The plaintiff disagrees and argues that it, rather than the defendant, is entitled to judgment as to count one because the policy language is ambiguous and should be construed against the insurer. The plaintiff further asserts that portions of Bogdan's deposition relating to the defendant's approach to processing claims by its insureds raises a genuine issue of material fact as to whether the defendant has a trade practice of unreasonably delaying or denying meritorious claims and therefore summary judgment should also CT Page 13633 be denied as to counts two and three.
 I. Count One: Breach of Contract
"It is the function of the court to construe the provisions of the contract of insurance. The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . ." (Citations omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v.Aetna Casualty Surety Co., 247 Conn. 801, 805-06,724 A.2d 1117 (1999). Ambiguous terms are those that, when looked at objectively, are susceptible of two or more equally reasonable interpretations. Raffel v. Travelers Indemnity Co.,141 Conn. 389, 392, 106 A.2d 716 (1954); see also 11 S. Williston, Contracts (4th Ed. 1999) § 30.5, pp. 68-69. In deciding among reasonable interpretations, that interpretation which will sustain the claim and cover the loss must be adopted. Raffel v. Travelers IndemnityCo., 141 Conn. 392; see also 11 S. Williston, Contracts (4th Ed. 1999) § 30.5, pp. 68-69.
Pursuant to the declarations page, the limits of insurance for "each occurrence" of employee dishonesty is $10,000. The policy also contains a provision entitled "Limit of Insurance," which provides: "(1) The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations. (2) All loss or damage: (a) Caused by one or more persons; or (b) involving a single act or series of related acts; is considered one occurrence." The very next paragraph, which the defendants refers to as a "noncumulation clause," is entitled "Additional Conditions," and provides in pertinent part: "(1) We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."
The policy at issue covers employee theft but monetarily limits an CT Page 13634 insured's potential recovery on a per "occurrence" basis. Resolution of this case, therefore, turns on whether Borman's thefts are more properly characterized as a single "occurrence" or multiple "occurrences." Although the policy elaborates on the company's limits of liability per "occurrence," it does not define the term "occurrence." Where a policy term is undefined, an interpretation by law, rather than an interpretation by contractual language, shall apply. 2D J. Appleman J. Appleman, Insurance Law and Practice § 6.5, p. 247 (1996). There are very few Connecticut cases that have addressed the issue as to what constitutes an "occurrence" for purposes of insurance coverage. See, e.g., Metropolitan Life Insurance Company v. Aetna Casualty SuretyCompany, Superior Court, judicial district of New London at Norwich, Docket No. 115305 (April 16, 1999, Koletsky, J.) (24 Conn.L.Rptr. 381, 384) (An omission, the alleged failure to publicize asbestos exposure, which lasted decades cannot constitute a single occurrence for purposes of insurance coverage. "[T]he last link in the causal chain is the exposure to asbestos and not the alleged failure to publish. . . . The `event of unfortunate character' must . . . be each claimant's separate exposure to asbestos; the injuries arise from multiple occurrences.");Mohawk Mountain Ski Area Inc. v. American Home Assurance Co., Superior Court, judicial district of Litchfield, Docket No. 056905 (January 30, 1995, Pickett, J.) (where a policy contains no definition of "occurrence," damage from two tornados which strike at separate times but within forty-five minutes of one another cannot, as a matter of law, be considered to be one occurrence).
Many other jurisdictions, however, have interpreted policies which limit an insurers' liability on an "occurrence" basis, in a variety of contexts, with varying results. Some cases center on the meaning of "occurrence" in the context of employee theft. See, e.g., Slater v. U.S.Fidelity and Guaranty Co, 379 Mass. 801, 806-09, 400 N.E.2d 1256 (1980) (where a policy covers amounts not exceeding $250 in any "one occurrence" and does not define the word "occurrence" or give any indication as to what it means, the words give rise to an ambiguity which must be construed against the insurer and therefore each act of employee theft was a separate "occurrence" pursuant to the policy). But see ChristLutheran Church v. State Farm Fire and Casualty, 122 N.C. App. 614,471 S.E.2d 124, 125-26 (1996) (where the policy provides "[a]ll loss involving a single act, or series of related acts, caused by one or more persons is considered one occurrence," employee's issuance of twenty-four separate checks to himself on various occasions constitutes one "occurrence") Other cases deal with the meaning of "occurrence" in the context of professional malpractice liability, also with inconsistent results. See Ariz. Prop. Cas. Ins. Guar. Fund v. Helme, 153 Ariz. 129,735 P.2d 451, 456-58 (Ariz. 1987) (claim that two physicians were negligent for failing to look at a patient's X-rays before surgery CT Page 13635 alleged two "occurrences," rather than one, under a medical malpractice policy because the definition of "occurrence" as a "series of related acts" is ambiguous); Doe v. Illinois St. Med. Inter-Insurance,234 Ill. App.3d 129, 599 N.E.2d 983, 988-89 (1992) (insured doctor"s numerous acts of negligence, as to one patient, during the policy period were all covered "occurrences" because the "related acts" provision of the policy was ambiguous). But See Bay Cities Paving Grading v. LawyersMut., 21 Cal.Rptr.2d 691, 693-702, 855 P.2d 1263 (1993) (allegations that an attorney had committed two separate acts of legal malpractice in handling one transaction for the same client constitutes just one "claim" for purposes of a policy which limits liability on a "per claim" basis, because even if acts were separate, they would still be "related" for purposes of coverage limitations).
Different jurisdictions take different approaches to interpreting "occurrence" language but a significant number of cases turn on the issue of causation. See, e.g., Ariz. Prop. Cas. Ins. Guar. Fund v. Helme, supra, 735 P.2d 455-58; Bay Cities Paving Grading v. Lawyers Mut., supra, 21 Cal.Rptr.2d 695-98; Stonewall Ins. Co. v. Asbestos ClaimsManagement Corp., 73 F.3d 1178, 1212-14 (2nd Cir. 1995). Courts generally find that there is one occurrence where there is one, uninterrupted cause that results in more than one loss or injury. See Christ Lutheran Churchv. State Farm Fire and Casualty Company, supra, 471 S.E.2d 126 (The plaintiff's loss due to one employee's thefts was caused, not by new and individual acts of dishonesty, but by the continued dishonesty of one employee. A continuumm of dishonesty is one "occurrence."); Olsen v.Moore, 56 Wis.2d 340, 202 N.W.2d 236, 241 (1972) (where the insured never regained control of his vehicle prior to hitting a second vehicle, there was one "accident" or "occurrence").
Courts also generally find that there is more than one occurrence when a cause is interrupted, either by an independent cause or by the actor regaining control of the situation. Liberty Mut. Ins. Co. v. Rawls,404 F.2d 880 (5th Cir. 1968) (where the insured's automobile collided with rear of an automobile in which the plaintiffs were riding and two to five seconds later the insured's automobile collided with a second automobile, there were two distinct "accidents" pursuant to the policy);Slater v. U.S. Fidelity and Guaranty Co., supra, 379 Mass. 809 (The "occurrence" which caused plaintiff's losses was not a scheme of dishonesty because "the scheme, without more, could not have caused the losses." Instead, it was each act of embezzlement that caused each loss.)
Other cases interpreting the applicable limits of "occurrence" language, both with and without a "noncumulation clause," turn on the doctrine of upholding the reasonable expectations of the insured because CT Page 13636 of ambiguities inherent in the contract language. See, e.g., PenalosaCo-op v. Farmland Mut. Ins., 14 Kan. App. 2d 321, 789 P.2d 1196, 1200
(1990) (because the provision limiting liability on an "occurrence" basis when read together with a provision that states that regardless of the number of years the policy remains in force, the limit of liability is the "occurrence" limit and shall not be cumulative was undoubtedly meant to limit the company's liability for all losses caused by a single employee, but because it could be read to mean that liability under the current policy does not attach to losses of prior periods, the ambiguity must be resolved in favor of the insured). But see Reliance Ins. v.Treasure Coast Travel Agency, Inc., 660 So.2d 1136, 1137-38 (1995) ("occurrence" language contained in limits of liability provision when taken in conjunction with general conditions section providing that the most the company would pay is the larger of the amount recoverable under this policy or a prior policy, limits insured's recovery to one policy despite the fact that the employee's embezzlement spanned four policy periods).
The doctrine of reasonable expectations is applied in Connecticut.Agosto v. Aetna Casualty and Surety Company, 239 Conn. 549, 552 n. 3,687 A.2d 1267 (1996). This is so because in interpreting the contract, it is not only the language of the instrument that must be considered, but the situation of the parties and the subject-matter of their transactions as well. Foley v. Huntington Company, 42 Conn. App. 712, 729,682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). "In arriving at the intent of the parties . . . it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." Id. "It is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters. . . ." O'Brien v. United States Fidelity Guaranty Co.,235 Conn. 837, 843, 669 A.2d 1221 (1996). The test of coverage is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to cover.Clinton v. Aetna Life Surety Co., 41 Conn. Sup. 560, 563, 594 A.2d 1046
(1991).
The court finds that coverage under the defendant's policy was probably meant to be limited in some circumstances but based on the policy language, it is difficult for an insured to tell what those circumstances might be. An insured may reasonably interpret a policy which limits liability based on "each occurrence" to mean that their recovery is limited to: $10,000 for each act of dishonesty; $10,000 for each employee; $10,000 for each policy period; or $10,000 for each coverage period. The court therefore concludes that because the policy terms CT Page 13637 restricting the defendant's liability for "each occurrence" are susceptible of more than one reasonable interpretation, the terms are ambiguous, and are to be construed against the insurer and in favor of the insured as a matter of law. The very fact that so many jurisdictions have considered the same, or similar, policy language in so many different contexts supports the court's conclusion that the terminology employed by the defendant is ambiguous. Further, a determination of the number of "occurrences" under a causation theory would lead to the same conclusion. Each of the plaintiff's losses were caused by a separate act of embezzlement because it was always within Borman's control to stop stealing from her employer and because it was Borman's individual acts of thefts that caused the plaintiff's losses, not her underlying dishonesty.
Additionally, the court finds that the "noncumulation clause" when read together with the provision limiting recovery to "any one occurrence," also leads to ambiguity because the two provisions can reasonably be read to either provide coverage or not provide coverage. The defendant claims that the "noncumulation clause' clearly limits its liability for the entire coverage period, of two years. The plaintiff's interpretation, on the other hand, is that the clause merely means that insurance which is unused during one policy period cannot be carried over to a subsequent policy period. The court finds that the plaintiff's interpretation is reasonable and is more in keeping with the reasonable expectations of the insured. The court determines that, because the language of the "noncumulation clause" is, like the "occurrence" language, susceptible of more than one reasonable interpretation, the interpretation which covers the plaintiff's losses must by adopted as a matter of law.
Accordingly, the plaintiff's motion for summary judgment as to count one is granted because there is no genuine issue of material fact and the plaintiff is entitled to judgment as a matter of law. The court concludes that each act of embezzlement constitutes an "occurrence" covered by the defendant's insurance policy up to the $10,000 per "occurrence" limit. The defendant's motion for summary judgment is denied as to count one.
 II. Counts Two and Three: CUTPA "and/or" CUIPA
The defendant moves for summary judgment as to counts two and three, the CUTPA and CUIPA claims respectively, on the ground that its conduct in processing the plaintiff's claim does not provide grounds for recovery under CUTPA and CUIPA because isolated instances of unfair settlement practices cannot support a CUTPA "and/or" CUIPA claim. The plaintiff argues that the defendant's motion should be denied because the defendant has not met its burden of proving, based on all of the evidence submitted, both that there is no genuine issue as to any material fact CT Page 13638 and that it is entitled to judgment as a matter of law. Further, the plaintiff contends that it has raised a genuine issue of material fact that the defendant has a trade practice of mishandling claims because it has submitted evidence, the deposition of Bogdan, the defendant's claims adjuster, in which he states the following: that the defendant has no formal policies in place for processing or reviewing the type of claim at issue here; that the defendant has no policy manuals and no formal training on handling claims; that the defendant made no effort to settle the plaintiff's claim until after this lawsuit was filed; and that it is the defendant's position that is the insured's duty to put together its own claim.
CUTPA and CUIPA prohibit persons from engaging in unfair insurance or other trade practices. See General Statutes §§ 42-110b et seq.; 38a-815
et seq. CUTPA provides that: "Any person who suffers any ascertainable loss of money or property . . . as a result of [an unfair trade practice] . . . may bring an action. . . ." General Statutes § 42-110g(a). CUIPA does not expressly provide a plaintiff with a private right of action; however, in Mead v. Burns, 199 Conn. 651, 663, 509 A.2d 11
(1986), the Supreme Court held that a private right of action does exist under CUTPA to enforce unfair insurance practices under CUIPA. Thus, in order to establish a cause of action against an insurer under CUTPA, the plaintiff must prove that the insurer has violated CUIPA. Mead v. Burns, supra, 199 Conn. 663.
An allegation of unfair claim settlement practices under subsection (6) of § 38a-816 requires a "showing of more than a single act of insurance misconduct." Mead v. Burns, supra, 199 Conn. 659. Where the gist of the plaintiff's claim is that the defendant unfairly failed to settle only the plaintiff's claim, there has been no CUIPA violation.Lees v. Middlesex Ins. Co., 229 Conn. 842, 849, 643 A.2d 1282 (1994). Isolated instances of unfair insurance settlement practices will not sustain a CUIPA claim; it requires proof that an insurer has engaged in unfair practices "with such frequency as to indicate a general business practice." (Internal quotation marks omitted.) Id. Further, "[t]he court may hot presume that . . . [the defendant] treats other similarly situated insureds the same." Webster Bank v. Travelers Casualty Surety, Superior Court, judicial district of New Britain, Docket No. 476078 (April 30, 1999, Graham, J.) (24 Conn.L.Rptr. 530, 534).
Although the plaintiff alleges that the defendant has engaged in unfair settlement practices in processing claims other than its own claim, the plaintiff has not presented any evidence which substantiates that allegation. Rather, the plaintiff invites the court to assume, based on Bogdan's deposition testimony, that the defendant has unfairly settled other claims simply because it has no written procedure in place for CT Page 13639 processing claims. The court finds that the plaintiff's CUIPA claim fails because the plaintiff has not produced evidence sufficient to show that the defendant's alleged unfair claim settlement practices constitute a "general business practice." Further, because one cannot maintain a CUTPA claim against an insurer absent an underlying CUIPA claim, the plaintiff's CUTPA claim fails as well. Lees v. Middlesex Ins. Co., supra,229 Conn. 449; Mead v. Burns, supra, 199 Conn. 659. Accordingly, the court concludes that, because the plaintiff has failed to produce the evidence necessary for CUTPA and CUIPA claims, the defendant's motion for summary judgment is granted as to counts two and three.
 CONCLUSION
The plaintiff's motion for summary judgment as to count one is granted because there is no genuine issue of material fact and the plaintiff is entitled to judgment as a matter of law. Accordingly, the defendant's motion for summary judgment as to count one is denied.
The defendant's motion for summary judgment as to counts two and three is granted because there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law.
So ordered. November 9, 2000.
BY THE COURT
KAREN NASH SEQUINO, J.